CONNECTICUT NATIONAL BANK *v.* JULIUS
RYTMAN ET AL.
(SC 15563)

Callahan, C. J., and Borden, Palmer, McDonald and Peters, Js.

---

[11] *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 2d 306 (1932).

Argued February 21—officially released May 20, 1997

*Donald R. Beebe,* with whom were *Janis M. Small* and *Susan B. Carr,* for the appellants (defendants and intervening defendants).

*Joseph J. Cassidy,* with whom were *Edward W. Gasser* and, on the brief, *Austin J. McGuigan, Mark E. Block* and *John M. Wolfson,* for the appellees (plaintiff and third party defendants).

*Opinion*

PETERS, J. The principal issue in this appeal is the preclusive effect on state litigation of the removal and subsequent federal court dismissal of a private claim

under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. In 1987, the plaintiff, the Connecticut National Bank, brought this action against the defendants, Julius and Dora Rytman (Rytmans),[1] to foreclose on certain mortgaged property. Thereafter, the Rytmans filed a substitute counterclaim against the plaintiff. In addition, the Rytmans cited in, and filed an amended cross complaint against, the third party defendants, Kofkoff Egg Farm Limited Partnership (Kofkoff Egg Farm), Fitchville Realty, Inc. (Fitchville Realty), Samuel Kofkoff, Robert Kofkoff, Joseph Fortin, Norwich Savings Society (Norwich Savings), Milton Jacobson, Glenn Gordon, and the law firm of Brown, Jacobson, Jewett and Laudone, P.C. (Brown, Jacobson).[2] The plaintiff and the third party defendants then filed a motion for summary judgment on the substitute counterclaim and amended cross complaint, respectively. The trial court, *Silbert, J.*, granted summary judgment as to the substitute counterclaim in its entirety and as to certain counts of the amended cross complaint. The Rytmans appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The following facts can be gleaned from the pleadings and various motions.[3] Beginning in the 1960s and

[1] Subsequent to the commencement of the foreclosure action, certain entities in which Julius and Dora Rytman had an interest successfully moved to be added as parties defendant. These entities include Colchester Egg Farms, Inc., Rytman Grain, Inc., Julius and Dora Rytman Proprietorship, Pinecrest Duck Farm Trust and Agri-Finance, Inc. Unless otherwise indicated, all references hereinafter to the Rytmans are to all parties defendant.

[2] Certain counts of the amended cross complaint were also directed against Colchester Foods, Inc. Colchester Foods, Inc., was not named in the Rytmans' motion to cite in additional defendants, however, because it held a mortgage interest in the Rytmans' property and, as a result, had already been named a defendant in the plaintiff's action against the Rytmans.

[3] The contentious nature of this action and the prolixity of the pleadings has, in many ways, obscured these facts. As the trial court aptly noted,

extending into the late 1980s, the Rytmans, owners and operators of an egg and grain business in Connecticut, entered into a series of loan agreements with the plaintiff. The loans were secured by the Rytmans' real and personal property. Norwich Savings, one of the third party defendants, participated in one of these loan agreements. Also during the late 1970s and the 1980s, the Rytmans entered into a series of egg sales and distribution agreements with Kofkoff Egg Farm and Colchester Foods, Inc. (Colchester Foods), entities owned by Samuel Kofkoff, Robert Kofkoff and Fortin, also third party defendants. In conjunction with these agreements, Colchester Foods lent approximately $500,000 to the Rytmans.[4]

In part as a result of the failure of the egg sales and distribution agreements, the Rytmans were not able to make payments on their loans to the plaintiff, to Norwich Savings, or to Colchester Foods. Consequently, the plaintiff assumed control over the financial management of the Rytmans' business, and Colchester Foods assumed control over its day-to-day operation.

In October, 1987, the plaintiff and the Rytmans entered into a work-out agreement in order to satisfy the Rytmans' debts through a distribution of assets. Also participating in this work-out agreement were Colchester Foods, Kofkoff Egg Farm, Fitchville Realty, Samuel Kofkoff, Robert Kofkoff, Fortin and Norwich Savings. The Rytmans entered into this agreement on the advice of their counsel, Jacobson, Gordon and Brown, Jacobson. In accordance with the agreement,

---

"[t]he course of this litigation has been long and torturous, with the more than 950 separate pleadings filed to date occupying forty-seven file folders and some nine linear feet of shelf space. . . . Virtually no issue or claim has gone uncontested."

[4] Although it is not entirely clear from the pleadings, apparently Fitchville Realty participated in some fashion in the egg sales and distribution agreements and the $500,000 loan transaction.

the plaintiff immediately instituted these foreclosure proceedings on the Rytmans' property.

The Rytmans do not deny having entered into the work-out agreement, but they challenge its validity as the culmination of a collective effort on the part of the plaintiff and third party defendants to drive them out of business and to seize their assets. Advised by new counsel, they opposed the plaintiff's foreclosure proceedings and filed a nineteen count substitute counterclaim (counterclaim) alleging, inter alia, breach of fiduciary duty, breach of a covenant of good faith and fair dealing, economic duress, fraud, conspiracy, tortious interference, and infliction of emotional distress.[5] Although the Rytmans sought to try the counterclaim to a jury, the trial court, *Hendel, J.*, struck the foreclosure

---

[5] Specifically, the counterclaim made the following allegations against the plaintiff: count one alleged a breach of fiduciary duty; count two alleged a failure to act in a commercially reasonable manner in violation of common law standards and General Statutes § 42a-9-501 et seq.; count three alleged economic duress; count four alleged a breach of the covenant of good faith and fair dealing in violation of common law standards and General Statutes § 42a-1-203; count five alleged unfair or deceptive trade practices in violation of General Statutes § 42-110b (a); count six alleged tortious interference with a business expectancy; count seven alleged that the October, 1987 agreement was unconscionable under common law and General Statutes § 42a-2-302; count eight alleged a violation of 12 U.S.C. § 1972 prohibiting a bank from engaging in tying arrangements; count nine alleged fraudulent misrepresentation; count ten alleged knowing participation in the breach of fiduciary duty allegedly committed by the third party defendants; count eleven alleged economic duress; count twelve alleged conspiracy with the third party defendants to restrict trade in violation of the antitrust provisions of General Statutes § 35-25 et seq.; count thirteen alleged that the plaintiff and the third party defendants had tortiously interfered with a business expectancy; count fourteen alleged conspiracy with the third party defendants, inter alia, to defraud the Rytmans in violation of various statutes and common-law standards; count fifteen alleged negligent infliction of emotional duress; count sixteen alleged intentional infliction of emotional duress; count seventeen alleged conspiracy with the third party defendants resulting in negligent infliction of emotional duress; count eighteen alleged conspiracy with the third party defendants to commit intentional infliction of emotional duress; and count nineteen alleged conspiracy with the third party defendants to commit acts previously alleged in the counterclaim.

proceeding, and with it the counterclaim, from the jury list.

The Rytmans also cited in, and filed a cross complaint against, the third party defendants. As amended, the cross complaint contained twenty-eight separate counts[6] and alleged causes of action based on common-law and statutory grounds similar to those raised in the counterclaim.[7] In addition, the cross complaint alleged

---

[6] The last of these twenty-eight counts was an "additional count" added by the Rytmans in a separate pleading. See footnote 7 of this opinion. We will refer to this additional count as count twenty-eight.

[7] Specifically, the cross complaint made the following allegations: count one alleged that Colchester Foods was in breach of an egg commission contract; count two alleged that Robert Kofkoff and Fortin personally had guaranteed the contract referenced in count one; count three alleged that Colchester Foods was in breach of an egg purchase contract; count four alleged that Colchester Foods, Samuel Kofkoff, Robert Kofkoff and Fortin had inflicted economic duress on the Rytmans in assuming control of their farming assets; count five alleged that Colchester Foods, Samuel Kofkoff, Robert Kofkoff and Fortin had inflicted economic duress on the Rytmans in mismanaging their farming operations; count six alleged that all third party defendants were in breach of the covenant of good faith and fair dealing in violation of common law and General Statutes § 42a-1-203 and had failed to act in a commercially reasonable manner pursuant to General Statutes § 42a-9-501 et seq.; count seven alleged that Colchester Foods, Kofkoff Egg Farm, Fitchville Realty, Samuel Kofkoff, Robert Kofkoff and Fortin had committed unfair and deceptive trade practices in violation of General Statutes § 42-110b (a); count eight alleged that all third party defendants knowingly, wilfully and/or maliciously had interfered with the Rytmans' contractual rights; count nine alleged that Colchester Foods, Samuel Kofkoff, Robert Kofkoff and Fortin had made false and malicious statements about the Rytmans; count ten alleged that Colchester Foods, Kofkoff Egg Farm, Fitchville Realty, Samuel Kofkoff, Robert Kofkoff, Fortin, Jacobson, Gordon and Brown, Jacobson had intentionally or recklessly inflicted emotional distress on the Rytmans; count eleven alleged that Colchester Foods, Kofkoff Egg Farm, Fitchville Realty, Samuel Kofkoff, Robert Kofkoff and Fortin had fraudulently misrepresented the terms of their agreements with the Rytmans; count twelve alleged that Colchester Foods, Kofkoff Egg Farm, Samuel Kofkoff, Robert Kofkoff, Fortin, Norwich Savings, Jacobson, Gordon and Brown, Jacobson had conspired to force the Rytmans out of business in violation of the antitrust provisions of General Statutes § 35-25 et seq.; count thirteen alleged that all third party defendants had tortiously interfered with the Rytmans' business expectancy; count fourteen alleged that Colchester Foods, Kofkoff Egg Farm, Fitchville Realty, Samuel Kofkoff, Robert Kofkoff

legal malpractice on the part of Jacobson, Gordon and Brown, Jacobson. The trial court, *Hendel, J.*, severed the action on the cross complaint from the underlying foreclosure proceedings.

While this foreclosure action, including its counterclaim and cross complaint, was still pending, the Rytmans instituted a separate action against the plaintiff

and Fortin had breached a fiduciary duty owed to the Rytmans; count fifteen alleged that Colchester Foods, Kofkoff Egg Farm, Fitchville Realty, Samuel Kofkoff, Robert Kofkoff and Fortin had conspired with the plaintiff to breach the fiduciary duty the plaintiff had owed to the Rytmans; count sixteen alleged that all third party defendants had conspired to defraud the Rytmans, to restrain trade in violation of General Statutes § 35-26, to breach a fiduciary duty, to violate General Statutes § 42-110a et seq., to breach their respective contracts with the Rytmans, to violate 12 U.S.C. § 1972, and to cause the Rytmans to suffer economic duress; count seventeen alleged that Norwich Savings had breached a fiduciary duty owed to the Rytmans; count eighteen alleged that Jacobson, Gordon and Brown, Jacobson had breached a fiduciary duty owed to the Rytmans; count nineteen alleged that Jacobson, Gordon and Brown, Jacobson had engaged in deceptive or unfair trade practices in violation of § 42-110b (a); count twenty alleged that Jacobson, Gordon and Brown, Jacobson knowingly had participated in the breach of fiduciary duty committed by the plaintiff and Norwich Savings; count twenty-one alleged that Jacobson, Gordon and Brown, Jacobson knowingly had participated in the breach of fiduciary duty committed by the third party defendants; count twenty-two alleged that Jacobson, Gordon and Brown, Jacobson had committed legal malpractice in their representation of the Rytmans; count twenty-three alleged that Colchester Foods, Kofkoff Egg Farm, Fitchville Realty, Samuel Kofkoff, Robert Kofkoff, Fortin and Norwich Savings had participated in the legal malpractice committed by Jacobson, Gordon and Brown, Jacobson; count twenty-four alleged that all third party defendants had forced the Rytmans to enter into the October, 1987 agreement under economic duress; count twenty-five alleged that Jacobson, Gordon and Brown, Jacobson had fraudulently misrepresented certain facts to the Rytmans; count twenty-six alleged that Colchester Foods, Kofkoff Egg Farm, Fitchville Realty, Samuel Kofkoff, Robert Kofkoff, Fortin, Jacobson, Gordon and Brown, Jacobson had negligently inflicted mental distress and anguish on the Rytmans; count twenty-seven alleged that Colchester Foods, Kofkoff Egg Farm, Fitchville Realty, Samuel Kofkoff, Robert Kofkoff, Fortin, Jacobson, Gordon and Brown, Jacobson had intentionally or recklessly inflicted emotional distress on the Rytmans; and, finally, count twenty-eight; see footnote 6 of this opinion; filed subsequent to the cross complaint alleged that Jacobson, Gordon and Brown, Jacobson had represented the Rytmans poorly in violation of their legal duties.

and third party defendants together. Relying on essentially the same operative facts that underlay their counterclaim and cross complaint, the Rytmans alleged in that separate action that the conduct of the plaintiff and third party defendants had violated RICO. Shortly thereafter, Norwich Savings, with the consent of the other third party defendants, and over the objection of the Rytmans, removed the RICO action to the United States District Court for the District of Connecticut.[8]

In the District Court, the plaintiff and all third party defendants, with the exception of Norwich Savings, filed motions to dismiss the RICO action pursuant to Federal Rule of Civil Procedure 12 (b) (6).[9] Norwich Savings independently filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (b).[10] The District Court granted the motions to dismiss and the motion for summary judgment. *Rytman v. Kofkoff Egg Farm Ltd. Partnership*, United States District Court, Docket No. 2:91CV01146 (PCD) (D. Conn. September 3, 1992). On the Rytmans' appeal to the United States Court of Appeals for the Second Circuit, that court affirmed the judgment of the District Court. *Rytman v. Kofkoff Egg Farm Ltd. Partnership*, United States Court of Appeals, Docket Nos. 93-7061, 93-7177

---

[8] At approximately the same time, the Rytmans also filed various state court actions against the plaintiff and third party defendants. None of the parties contends that these separate actions bear directly on the disposition of this appeal.

[9] Federal Rule of Civil Procedure 12 (b) provides in relevant part: "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion . . . (6) failure to state a claim upon which relief can be granted . . . ."

[10] Federal Rule of Civil Procedure 56 (b) provides in relevant part: "A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

(2d Cir. June 21, 1993). The Court of Appeals concluded that the Rytmans had failed to state a claim under RICO and had failed to adduce any material facts to demonstrate a violation thereof. Id. The United States Supreme Court denied the Rytmans' petition for certiorari.

Thereafter, the plaintiff and third party defendants filed separate motions for summary judgment in this state court action, contending that, under the doctrine of res judicata, the federal court disposition of the RICO action precluded the Rytmans from pursuit of their state court counterclaim and cross complaint. The trial court, *Silbert, J.*, granted these motions, with respect to the counterclaim and all but five counts of the cross complaint, not on the basis of res judicata but on the basis of collateral estoppel.

On appeal, the parties primarily dispute the propriety of the summary judgment. The Rytmans contend that although the trial court, *Silbert, J.*, properly refused to apply the doctrine of res judicata, it improperly determined that the legal issues raised in the RICO action were sufficiently identical to those raised in the counterclaim and cross complaint to warrant the application of collateral estoppel. The plaintiff and third party defendants, on the other hand, although supporting the trial court's use of collateral estoppel, contend, in the alternative, that the doctrine of res judicata also bars the state court litigation in its entirety. In addition, the Rytmans contend that the trial court, *Hendel, J.*, improperly struck the foreclosure action from the jury list and also improperly severed their cross complaint from the underlying foreclosure proceedings.

I

Before considering the merits of the Rytmans' claims, we must first determine whether the trial court's partial summary judgment on the cross complaint constitutes

a reviewable final judgment.[11] The trial court, *Silbert, J.*, granted summary judgment on the cross complaint with respect to counts four through twenty-one and twenty-three through twenty-seven, but denied summary judgment with respect to counts one, two, three, twenty-two and twenty-eight. See footnote 7 of this opinion. The plaintiff and third party defendant Norwich Savings contend that the court's denial of summary judgment on these five counts renders nonfinal and nonappealable the entire summary judgment on the rest of the cross complaint. See Practice Book § 4000. We disagree and conclude that, under Practice Book § 4002B,[12] the partial summary judgment decision is final with respect to those parties not named in the five outstanding counts.

It is well established that appellate courts in this state do not have jurisdiction to entertain appeals not taken from final judgments. See General Statutes § 52-263; *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983). The lack of a final judgment is a jurisdictional defect that mandates dismissal. See, e.g., *Stroiney* v. *Crescent Lake Tax District*, 197 Conn. 82, 86, 495 A.2d 1063 (1985).

Although the denial of a motion for summary judgment does not ordinarily constitute an appealable final judgment, Practice Book § 4002B recognizes that an appeal from a summary judgment on less than all counts

---

[11] The plaintiff and the third party defendant Norwich Savings originally filed a motion to dismiss in the Appellate Court for lack of a final judgment. The motion was denied without opinion. Upon transferring this action and after fuller briefing, we asked the parties to readdress this issue. See *Governors Grove Condominium Assn., Inc.* v. *Hill Development Corp.*, 187 Conn. 509, 511 n.6, 446 A.2d 1082 (1982), overruled on other grounds, *Morelli* v. *Manpower, Inc.*, 226 Conn. 831, 834, 628 A.2d 1311 (1993).

[12] Practice Book § 4002B provides in relevant part: "A judgment disposing of only a part of a . . . cross complaint is a final judgment if that judgment disposes of all causes of action in that . . . cross complaint brought . . . against a particular party or parties."

of a cross complaint is permissible to the extent that the judgment "disposes of all causes of action . . . brought . . . against a particular party or parties." See *State* v. *Curcio*, supra, 191 Conn. 31 (final judgment occurs where action concludes rights of party such that further proceedings cannot affect them). In this case, the five counts not disposed of by summary judgment were directed against Colchester Foods (counts one and three), Robert Kofkoff and Fortin (count two), and Jacobson, Gordon and Brown, Jacobson (counts twenty-two and twenty-eight). Accordingly, the summary judgment did not conclude the Rytmans' action against these six third party defendants and does not constitute a final judgment with respect thereto. Practice Book § 4002B. With respect to the trial court's summary judgment on the other twenty-three counts, however, that judgment is final and reviewable to the extent that those counts are directed against the remaining third party defendants against whom no other claims for relief are pending.[13] See *Burns* v. *Board of Education*, 228 Conn. 640, 644 n.3, 638 A.2d 1 (1994).

The fact that the same six parties against whom the Rytmans have pending claims are also named in some

---

[13] Relying on *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 194, 544 A.2d 604 (1988), the six third party defendants named in the outstanding counts contend that the partial denial of their motions for summary judgment should be reviewed on appeal because those motions were based on principles of collateral estoppel. We decline to decide this issue. Even if *Convalescent Center of Bloomfield, Inc.*, would permit these six third party defendants to appeal from the denial of their motions, they have failed to file a cross appeal within ten days after the filing of the Rytmans' appeal; see Practice Book § 4005; have failed to raise this issue in a preliminary statement of issues; see Practice Book § 4013 (a) (1) (B); and have failed to obtain certification to appeal. See Practice Book § 4002C (certification from trial court and chief justice or chief judge required before party can appeal judgment rendered on some, but not all, causes of action). Moreover, in view of our conclusion that summary judgment improperly was granted on the remaining counts of the cross complaint and that this matter must, therefore, be remanded to the trial court, reviewing the partial denial of summary judgment at this stage in the proceedings would not further the interest of judicial economy.

of the other twenty-three counts does not undermine the conclusion that there is a final judgment with respect to the remaining parties. In applying § 4002B, an appellate court focuses not on the allegations of each count in the cross complaint, a variable easily manipulated by the cross complainant, but rather on those parties against whom a cross complainant has no remaining causes of action. Once the interest of any one party has been so concluded, that judgment has attained finality with respect to that party. See Practice Book § 4002B, official commentary (judgment is appealable when "disposing of counts pleaded against parties against whom no other relief is sought in the counts that remain pending"); see also State v. Curcio, supra, 191 Conn. 31.[14]

## II

We turn next to the crux of the parties' dispute: the trial court's application of the doctrine of collateral estoppel. The Rytmans contend that, because the RICO action involved only federal criminal issues, its dismissal does not bar the common law and statutory causes of action alleged in their counterclaim and cross complaint in the state court. We agree.[15] Whatever the

[14] Hereinafter, all references to the cross complaint are to those portions properly before us on appeal. Similarly, all references to the third party defendants are to those third party defendants not named in the five pending counts of the cross complaint.

[15] The Rytmans also claim that the failure of the plaintiff and third party defendants specifically to plead collateral estoppel precluded the trial court from considering this issue at all. We disagree. The plaintiff and third party defendants did plead the doctrine of res judicata, which, as the trial court recognized, bears a close affinity to collateral estoppel. See Advest, Inc. v. Wachtel, 235 Conn. 559, 565, 668 A.2d 367 (1995) ("[t]he term 'res judicata' is often employed to refer to the related doctrines of claim preclusion and issue preclusion"); Delahunty v. Massachusetts Mutual Life Ins. Co., 236 Conn. 582, 589, 674 A.2d 1290 (1996) (res judicata and collateral estoppel are "first cousins"). More importantly, the Rytmans have failed to demonstrate how the trial court in any way prejudiced them by considering the collateral estoppel issue. Indeed, the trial court was attentive to the Rytmans' due process concerns and invited them to submit a supplemental brief on

burdens of this protracted litigation on the judicial branch, it cannot be resolved on the basis of either collateral estoppel or res judicata.[16]

The standard of review of a trial court's decision to grant summary judgment is well established. "[W]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 292, 596 A.2d 414 (1991).

In this case, the Rytmans do not contend that the trial court disregarded issues of material fact. Nor do they question the general proposition that a prior federal decision that satisfies either the doctrine of collateral estoppel or that of res judicata may have a preclusive effect on subsequent state litigation. See

this issue. See *Maguire* v. *Maguire*, 222 Conn. 32, 42 n.10, 608 A.2d 79 (1992) (no prejudice where supplemental brief allowed). Under these circumstances, we conclude that the collateral estoppel issue was properly before the trial court.

[16] This is not to say that Connecticut courts are powerless to prevent abuse of parties and of the courts. As the trial court observed, the Rytmans' eighty-nine page counterclaim and seventy-two page cross complaint are marked by "almost mind numbing prolixity." If, on remand, the trial court were to determine that this prolixity, in conjunction with the duplicative nature of the Rytmans' other pending lawsuits; see footnote 8 of this opinion; is indicative not of legitimate litigation strategy, but of an intent to delay further these decade old foreclosure proceedings, the trial court would have the authority to fashion an effective and appropriate remedy. "Courts have an inherent power to disregard sham or frivolous pleadings which have been interposed for the purpose of thwarting the orderly progress of a case." (Internal quotation marks omitted.) *Friedlander* v. *Friedlander*, 191 Conn. 81, 91, 463 A.2d 587 (1983); *Burritt Mutual Savings Bank of New Britain* v. *Tucker*, 183 Conn. 369, 373, 439 A.2d 396 (1981); see also *In re Martin-Trigona*, 763 F.2d 140, 142 (2d Cir. 1985), cert. denied, 474 U.S. 1061, 106 S. Ct. 807, 88 L. Ed. 2d 782 (1986); *Safir* v. *United States Lines, Inc.*, 792 F.2d 19, 23–24 (2d Cir. 1986), cert. denied, 479 U.S. 1099, 107 S. Ct. 1323, 94 L. Ed. 2d 175 (1987); *Helene Curtis Industries* v. *Sales Affiliates*, 105 F. Sup. 886, 901–902 (S.D.N.Y.), aff'd, 199 F.2d 732 (2d Cir. 1952) (per curiam).

*Virgo* v. *Lyons*, 209 Conn. 497, 510, 551 A.2d 1243 (1989). Rather, they maintain that, under the circumstances of this case, the plaintiff and third party defendants were not entitled to a judgment as a matter of law on the basis of collateral estoppel.[17]

"Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action." (Citations omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones*, supra, 220 Conn. 296. "In order for collateral estoppel to apply, [moreover], there must be an identity of issues, that is, the prior litigation must have resolved the same legal or factual issue that is present in the second litigation." (Internal quotation marks omitted.) *Upjohn Co.* v. *Plan-*

---

[17] The Rytmans also claim that the portion of the federal decision granting the plaintiff's and the third party defendants' motions to dismiss the RICO action under rule 12 (b) (6) of the Federal Rules of Civil Procedure cannot serve as collateral estoppel in the pending state court action. In support, the Rytmans cite to *DeLaurentis* v. *New Haven*, 220 Conn. 225, 597 A.2d 807 (1991). *DeLaurentis*, however, does not carry the weight of the Rytmans' argument. In that case, we held that the disposition of a federal civil rights action brought under 42 U.S.C. § 1983 did not serve as collateral estoppel in subsequently instituted state court proceedings. Id., 240–41. We based this decision on a number of factors, including our observation that a federal dismissal under rule 12 (b) (6) cannot serve as "fact preclusion" because, in granting such a motion, the federal court must assume facts as pleaded. Id., 239–40. Unlike *DeLaurentis*, the parties who in this case filed a motion to dismiss under rule 12 (b) (6) do not contend that the federal dismissal serves to preclude any "facts" asserted in the state court pleadings. Rather, they contend that the dismissal precludes relitigation of any identical *issues* predicated upon those facts. We agree. To the extent that a federal dismissal under rule 12 (b) (6) actually and necessarily decides issues identical to those advanced in state court litigation, we conclude that the federal dismissal may serve collaterally to estop that state litigation. See 5A C. Wright & A. Miller, Federal Practice and Procedure (2d Ed. 1990) § 1357, p. 369 ("a dismissal under [r]ule 12 (b) (6) is determinative as to the legal sufficiency of a particular claim presented in the complaint").

*ning & Zoning Commission*, 224 Conn. 82, 93–94, 616 A.2d 786 (1992).

In this case, the trial court determined that the federal court decision satisfied the requirements of collateral estoppel. Focusing almost exclusively on the District Court opinion, the trial court held that the adverse disposition of the Rytmans' RICO action precluded further litigation regarding either the intentional or negligent misconduct alleged against the plaintiff or third party defendants. With respect to the common law and statutory claims made in the counterclaim, the trial court determined that "[e]ach and every one of the legal issues . . . [was] in fact decided adversely to the Rytmans in the federal courts." Similarly, the trial court determined that, of the twenty-eight counts in the cross complaint, twenty-three involved issues that were "actually decided adversely" to the Rytmans in the federal courts. Having concluded that the issues necessarily resolved by the federal courts were essentially similar to those raised in the state court pleadings, the trial court granted summary judgment.

We disagree both with the trial court's heavy reliance on the opinion of the District Court and with its ultimate assessment of the relevant claims under the law of collateral estoppel. As a procedural matter, once the Court of Appeals for the Second Circuit made its own assessment of the Rytmans' RICO claims and undertook independently to explain its reasoning, which was not identical with that of the District Court, the relevant decision for purposes of issue or claim preclusion necessarily became that of the Second Circuit.[18] Cf. 1

---

[18] *Upjohn Co.* v. *Planning & Zoning Commission*, supra, 224 Conn. 82, cited by the plaintiff and third party defendants, is not to the contrary. In *Upjohn Co.*, we relied on the opinions of both the District Court and the Second Circuit in determining that a prior federal court litigation collaterally estopped later state court proceedings. Id., 94. Unlike the present case, however, *Upjohn Co.* involved a District Court judgment that was affirmed, per curiam, by the Circuit Court in an opinion that relied "substantially [on]

Restatement (Second), Judgments § 27, comment (o), p. 263 (1982).[19] As a substantive matter, our analysis of the opinion of the Second Circuit persuades us that the issues actually decided by that court are not so identical to those raised in the state court pleadings as to warrant the application of collateral estoppel. See *Upjohn Co. v. Planning & Zoning Commission*, supra, 224 Conn. 93–94 (identity of issues required for collateral estoppel).

The Second Circuit, after describing the seven requirements for establishing a valid claim under RICO,[20] held that the Rytmans' allegations did not meet these requirements. Two substantive determinations were central to this holding: (1) with respect to the motion to dismiss under rule 12 (b) (6), the Rytmans had failed to plead extortion within the prohibitions of the Hobbs Act, 18 U.S.C. § 1951;[21] and (2) with respect

the reasons stated" by the District Court. *Planning & Zoning Commission v. Upjohn Co.*, 921 F.2d 27, 28 (2d Cir. 1990). Under those circumstances, it was necessary to refer to the District Court opinion in order properly to consider the pertinent legal issues. Such is not the case here.

[19] In view of our decision that the trial court improperly relied on the District Court opinion, we do not address the Rytmans' claim that the District Court opinion cannot serve as collateral estoppel because it was based on alternative grounds, any one of which was sufficient to support its decision. See 1 Restatement (Second), supra, § 27, comment (i), p. 259.

[20] The Second Circuit observed that in order "[t]o state a RICO cause of action, a plaintiff must allege '(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate . . . commerce.' *Moss* v. *Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983), cert. denied [sub nom. *Moss* v. *Newman*], 465 U.S. 1025 [104 S. Ct. 1280, 79 L. Ed. 2d 684] (1984)."

[21] The Second Circuit also based its decision to dismiss on more procedural grounds, concluding that the Rytmans had failed to plead with particularity their allegations of federal mail or wire fraud; see 18 U.S.C. §§ 1341 and 1343, respectively; as required under Federal Rule of Civil Procedure 9 (b). We have held that "if the nature of [a prior] hearing carries procedural limitations that would not be present at a later hearing, the party might not have a full and fair opportunity to litigate"; (internal quotation marks omitted) *Mulligan* v. *Rioux*, 229 Conn. 716, 751, 643 A.2d 1226 (1994); and

to Norwich Savings' motion for summary judgment, the Rytmans had failed to adduce evidence showing that Norwich Savings had "attempted to acquire or maintain an interest in the Rytmans' enterprise in an unlawful manner" as required under RICO.

Neither of these determinations resolved an issue identical to those advanced in the state court pleadings. With respect to the first, the Rytmans do not allege anywhere in their counterclaim or cross complaint that the actions of either the plaintiff or the third party defendants constituted criminal extortion of any sort under the Hobbs Act. Although failure to make such an allegation was fatal to their RICO claim, its absence has no preclusive effect, for purposes of collateral estoppel, on further litigation of their common-law and statutory claims, which need not allege either extortion or criminality. Cf. *DeLaurentis* v. *New Haven*, 220 Conn. 225, 240, 597 A.2d 807 (1991) (failure to state federal constitutional claim did not collaterally estop subsequent state court litigation). With respect to the second, the federal court's affirmance of a summary judgment in favor of Norwich Savings, although phrased in general terminology, must be construed in light of the RICO statute that the court was asked to apply. A decision that, for RICO purposes, the Rytmans had failed to present evidence showing an unlawful attempt by Norwich Savings to acquire an interest in their enterprise does not collaterally estop the Rytmans from pursuit of their unrelated claims of misconduct on the part of Norwich Savings.

At bottom, our conclusion that collateral estoppel was improperly applied in this case is a recognition

collateral estoppel would not apply. There is no comparable pleading requirement for proving fraud in Connecticut courts. Accordingly, to the extent that the issues identified in the Rytmans' state court fraud allegations are similar to those in the allegations of mail and wire fraud made in the RICO action, the procedural limitations placed on the Rytmans' claims by rule 9 (b) render the doctrine of collateral estoppel inapplicable.

that the RICO action arose under, and was resolved on the basis of, a complex federal criminal statute around which a specialized body of law and procedural limitations has developed. See, e.g., *National Organization for Women, Inc.* v. *Scheidler*, 510 U.S. 249, 114 S. Ct. 798, 127 L. Ed. 2d 99 (1994); *Reves* v. *Ernst & Young*, 507 U.S. 170, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993); *H. J., Inc.* v. *Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989); see also G. Joseph, Civil RICO: A Definitive Guide (1992) § 23, p. 127 ("[t]he complexity of the RICO statute demands precision in pleading"). Under the circumstances of this case, such a disposition does not collaterally estop pending state court claims that are based on quite different legal theories arising under civil statutes and common law. See *DeLaurentis* v. *New Haven*, supra, 220 Conn. 240; *Wight* v. *Southington*, 43 Conn. App. 654, 659, 685 A.2d 686 (1996) ("[t]he issues involved in a zoning appeal are separate and distinct from those involved in a civil rights action under the federal statute").

## III

In the alternative, the plaintiff and third party defendants claim that the doctrine of res judicata precludes the Rytmans' state court litigation. They contend that, because the same set of facts underlies both the RICO and the state court actions, the Rytmans were required to raise all legal theories supportable by these facts in one proceeding. They argue that the Rytmans' failure to do so in federal court, after removal of the RICO litigation to that forum, now precludes the Rytmans from pursuing separate state court litigation. The trial court rejected this argument. It concluded that, once the District Court had disposed of the RICO action over which it had had original jurisdiction, it would have

declined to exercise pendent jurisdiction[22] over the remaining state law claims. In the absence of pendent jurisdiction, the Rytmans' common-law claims could not have been adjudicated in the federal forum. We agree with the trial court.[23]

Although the doctrines of collateral estoppel and res judicata are conceptually related, in practice their application may yield distinct results. Unlike collateral estoppel, under which preclusion occurs only if a claim actually has been litigated, "[u]nder the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim . . . [or any claim based on the same operative facts that] *might have been made. . . .* [T]he appropriate inquiry with respect to [claim] preclusion is whether the party had an *adequate opportunity to litigate the matter in the*

---

[22] Pendent jurisdiction "permits a plaintiff, in appropriate circumstances, to join with his federal claim a related state claim over which the court has no independent basis of subject matter jurisdiction." *Corporacion Venezolana de Fomento* v. *Vintero Sales Corp.*, 477 F. Sup. 615, 622 n.13 (S.D.N.Y. 1979), quoted in 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure (2d Ed. 1984) § 3567, p. 109 n.11. Although the concept of "pendent jurisdiction" has merged with that of "ancillary jurisdiction" under modern federal practice; see footnote 25; we will continue to use the phrase "pendent jurisdiction" as it more accurately describes the situation in this case.

[23] The Rytmans contend that the plaintiff and the third party defendants have waived their right to assert res judicata by failing to object to the filing of the separate RICO action. They contend that under *A. J. Masi Electric Co.* v. *Marron & Sipe Building & Construction Corp.*, 21 Conn. App. 565, 567–68, 574 A.2d 1323 (1990), when one party simultaneously maintains separate causes of action on the same claim and the adverse party fails to object, the adverse party thereby acquiesces in the splitting. See also 1 Restatement (Second), supra, § 26 (1) (a) and comment (a), pp. 233–35. The trial court determined, however, that "[t]he conduct of the [plaintiff and third party defendants] in this case, by immediately seeking removal of the RICO complaint to [f]ederal [c]ourt and, once there, immediately and successfully seeking its dismissal, is not an acquiescence in the Rytmans' decision to split [their] cause of action." We agree with the trial court. See *Orselet* v. *DeMatteo*, 206 Conn. 542, 547–48, 539 A.2d 95 (1988) (rejecting absolute rule in favor of fact specific approach).

*earlier proceeding . . . .*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.*, 236 Conn. 863, 871–72, 675 A.2d 441 (1996).

For the purposes of claim preclusion in this case, the central issue is not whether the operative facts underlying the Rytmans' state court action are effectively the same as those underlying their RICO action. See *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 236 Conn. 590 (applying transactional test for purposes of determining identity of underlying facts). There is little question on this score.

Rather, the central issue is whether, with respect to these operative facts, the Rytmans had an adequate opportunity to litigate all of their claims, RICO and otherwise, in the federal proceeding. We agree with the trial court that, in determining whether the Rytmans had such an opportunity, we should apply the test set forth in the Restatement (Second) of Judgments, § 25, comment (e). Under this test, "[w]hen the plaintiff brings an action on [a] claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. If however, the court in the first action *would clearly not have had jurisdiction* to entertain the omitted theory or ground (or, having jurisdiction, *would clearly have declined to exercise it as a matter of discretion*), then a second action in a competent court presenting the omitted theory or ground should not be precluded." (Emphasis added.) 1 Restatement (Second), supra, § 25, comment (e), p. 213. This test has been followed by numerous courts throughout the country. See, e.g., *Federated Dept. Stores, Inc.* v. *Moitie*, 452 U.S. 394, 404, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981) (Blackmun, J., concurring)

(citing to tentative draft of Restatement); *Merry* v. *Coast Community College District,* 97 Cal. App. 3d 214, 229–30, 158 Cal. Rptr. 603 (4th Dist. 1979); *Puckett* v. *Emmett,* 113 Idaho 639, 643, 747 P.2d 48 (1987); *Anderson* v. *Phoenix Investment Counsel of Boston, Inc.,* 387 Mass. 444, 450, 440 N.E.2d 1164 (1982); *Buchanan* v. *Dain Bosworth, Inc.,* 469 N.W.2d 508, 510 (Minn. App. 1991). Applied to the circumstances of this case, the Restatement test requires us to decide whether the federal court, clearly vested with jurisdiction over the Rytmans' RICO claim, would clearly have had no pendent jurisdiction, or clearly would have declined to exercise pendent jurisdiction, over the Rytmans' common-law claims.

The plaintiff and the third party defendants argue, however, that it is improper for this court to speculate on what the federal court might have done, because the Rytmans in this case failed to avail themselves of the opportunity to resolve this question by invoking the federal court's pendent jurisdiction. According to the plaintiff and third party defendants, after removal of the RICO claim, the applicable principles of res judicata required the Rytmans to attempt to resolve this entire action in a single proceeding in the federal court. See *Gilles* v. *Ware,* 615 A.2d 533, 540–41 (D.C. App. 1992) (party opposing res judicata should invoke the federal court's pendent jurisdiction). For two reasons, we disagree. First, the Restatement test contains no such requirement. Although a party concerned with the possible application of res judicata may find it useful to obtain a definitive federal court ruling, the Restatement does not impose a ritualistic duty of formal pleading upon a party willing to shoulder the juridical risk of persuasion with respect to what the federal court *clearly* would have done.[24] Second, the rule of the

---

[24] We do not suggest that the failure to invoke pendent jurisdiction is not a factor to consider in deciding whether res judicata should apply, only

Restatement is particularly appropriate in a case such as this one, in which the Rytmans, from the outset, *opposed* the removal of their RICO action. The plaintiff and third party defendants have brought to our attention no case law in which a party whose federal action was involuntarily removed was required either to litigate its state court action in the federal court or else to face automatic claim preclusion. Under the circumstances of this case, "[w]e decline to require the [Rytmans] to grasp, at their peril, either horn of this dilemma." *Orselet* v. *DeMatteo*, 206 Conn. 542, 548, 539 A.2d 95 (1988).

We turn then to determining whether, pursuant to the Restatement test, the District Court in this case "would clearly not have had [pendent] jurisdiction" or, if it would have had such jurisdiction, whether it "would clearly have declined to exercise it as a matter of discretion . . . ." The answer to this inquiry turns on the scope of pendent jurisdiction in federal courts in general and the Second Circuit in particular. See 2 Restatement (Second), supra, § 87, p. 314 ("[f]ederal law determines the effects under the rules of res judicata of a judgment of a federal court").

The modern doctrine governing the exercise of pendent jurisdiction in federal courts stems from the United States Supreme Court's decision in *United Mine Workers of America* v. *Gibbs*, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). See *Carnegie-Mellon University* v. *Cohill*, 484 U.S. 343, 348, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988). "In *Gibbs*, the Court responded to [past confusion regarding the doctrine of pendent jurisdiction] by establishing a new yardstick for deciding whether a federal court has jurisdiction over a state-

that such an invocation is not a prerequisite. As the reporter's note to the Restatement points out, "*in cases of doubt*, it is appropriate for [the party opposing res judicata] to bring forward his state theories in the federal action . . . ." (Emphasis added.) 1 Restatement (Second), supra, § 25, reporter's note, p. 228.

law claim brought in a case that also involves a federal question. The Court stated that a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.' [*United Mine Workers of America* v. *Gibbs*, supra, 383 U.S. 725]. The Court intended this standard not only to clarify, but also to broaden, the scope of federal pendent jurisdiction. . . . According to *Gibbs*, 'considerations of judicial economy, convenience and fairness to litigants' support a wide-ranging power in the federal courts to decide state-law claims in cases that also present federal questions.' Id., [726].

"At the same time, however, *Gibbs* drew a distinction between the power of a federal court to hear state-law claims and the discretionary exercise of that power. The *Gibbs* Court recognized that a federal court's determination of state-law claims could conflict with the principle of comity to the States and with the promotion of justice between the litigating parties. For this reason, *Gibbs* emphasized that 'pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.' [Id.] Under *Gibbs*, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, *as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain*, the federal court *should* decline the exercise of jurisdiction by dismissing the case without prejudice. Id., [726–27]. As articulated by *Gibbs*, the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow

courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." (Citation omitted; emphasis added.) *Carnegie-Mellon University* v. *Cohill*, supra, 484 U.S. 349–50.

In 1990, Congress codified the law of pendent jurisdiction.[25] See 28 U.S.C. § 1367.[26] Subsection (a) of § 1367 sets out the constitutional limits of a district court's power to exercise pendent jurisdiction first articulated in *Gibbs*. See 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure (2d Ed. 1984) § 3567.1, supplement, p. 24. A district court may entertain a pen-

---

[25] This codification merged the doctrines of "ancillary jurisdiction" and "pendent jurisdiction" under the rubric "supplemental jurisdiction." See 28 U.S.C. § 1367 (a). Although ancillary and pendent claims are not entirely distinguishable; see *Aldinger* v. *Howard*, 427 U.S. 1, 13, 96 S. Ct. 2413, 49 L. Ed. 2d 276 (1976); a claim that is considered ancillary is usually one that is "asserted after the complaint is filed by one other than the plaintiff." *Corporacion Venezolana de Fomento* v. *Vintero Sales Corp.*, 477 F. Sup. 615, 622 n.13 (S.D.N.Y. 1979), quoted in 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure (2d Ed. 1984) § 3567, p. 109 n.11.

[26] Title 28 of the United States Code, § 1367, provides in relevant part: "(a) Except as provided in [subsection (c)], in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . .

"(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

"(1) the claim raises a novel or complex issue of State law,

"(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

"(3) *the district court has dismissed all claims over which it has original jurisdiction*, or

"(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." (Emphasis added.)

This statute was enacted as a response to *Finley* v. *United States*, 490 U.S. 545, 109 S. Ct. 2003, 104 L. Ed. 2d 593 (1989), a case in which the court held that a district court could not exercise pendent party jurisdiction in the absence of affirmative Congressional authorization. See D. Gold, note, "Supplemental Jurisdiction over Claims by Plaintiffs in Diversity Cases: Making Sense of 28 U.S.C. § 1367 (b)," 93 Mich. L. Rev. 2133, 2145–47 (1995).

dent claim only if it is "so related to claims in the action within such original jurisdiction that [it forms] part of the same case or controversy under Article III of the United States Constitution. . . ." 28 U.S.C. § 1367 (a). Subsection (c) enumerates those situations identified in *Gibbs* in which a district court may decline to exercise pendent jurisdiction even when it has the power to do so. In particular, under § 1367 (c) (3) a district court may refuse pendent jurisdiction when the court "has dismissed all claims over which it has original jurisdiction . . . ." See *United Mine Workers of America* v. *Gibbs*, supra, 383 U.S. 726.

Thus, the federal law governing pendent jurisdiction identified in *Gibbs* and codified in 28 U.S.C. § 1367 focuses on two key and distinct elements. These elements are: (1) the constitutional *power* of a district court to entertain pendent claims; and (2) its judicial *discretion* to decline to entertain those claims which it otherwise has the power to consider.

In this case, the parties do not dispute that the District Court had the *power* to have appended the Rytmans' counterclaim and cross complaint to the RICO action. Indeed, both sets of claims arose from a "common nucleus of operative fact"; *United Mine Workers of America* v. *Gibbs*, supra, 383 U.S. 725; and form "part of the same case or controversy." 28 U.S.C. § 1367. Accordingly, we conclude that, under these circumstances, the District Court "would clearly . . . have had jurisdiction" to entertain the counterclaim and cross complaint. See 13B C. Wright, A. Miller & E. Cooper, supra, § 3567.1, p. 117 (loose factual connection sufficient to empower court to assume pendent jurisdiction).

The parties do, however, dispute whether the District Court, in its discretion, "would clearly have declined" to entertain the counterclaim and cross complaint after having disposed of the RICO action. This dispute must

be analyzed in light of decisions in the Second Circuit that substantially limit a district court's exercise of discretion to entertain pending claims. "The Second Circuit has held that 'absent exceptional circumstances,' where federal claims are disposed of [prior to trial], courts should 'abstain from exercising pendent jurisdiction.' *Drexel Burnham Lambert* v. *Saxony Heights Realty*, 777 F. Sup. 228, 240 (S.D.N.Y. 1991) (quoting *Walker* v. *Time Life Films, Inc.*, 784 F.2d 44, 53 [2d Cir.], cert. denied, 476 U.S. 1159, 106 S. Ct. 2278, 90 L. Ed. 2d 721 [1986]). 'Factors to be considered by the court include (1) the length of time the matter has been pending before the federal court; (2) the proximity of the trial date; and (3) the predominance of issues of federal, as opposed to local concern.' *Drexel Burnham Lambert*, supra, [240]. 'In the usual case in which all federal law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims.' *Morse* v. *University of Vermont*, 973 F.2d 122, 127–128 (2d Cir. 1992)." *Reynolds* v. *Mercy Hospital*, 861 F. Sup. 214, 224 (W.D.N.Y. 1994); see also *Rounseville* v. *Zahl*, 13 F.3d 625, 631 (2d Cir. 1994); *Travelers Ins. Co.* v. *Keeling*, 996 F.2d 1485, 1490 (2d Cir. 1993); *West Hartford* v. *Operation Rescue*, 915 F.2d 92, 104 (2d Cir. 1990) (" 'if the federal claims are dismissed before trial . . . the state claims should be dismissed as well,' " quoting *United Mine Workers of America* v. *Gibbs*, supra, 383 U.S. 726). "In exercising [its] discretion, a district court is required to 'consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction. . . .' " *Block* v. *First Blood Associates*, 988 F.2d 344, 351 (2d Cir. 1993), quoting *Carnegie-Mellon University* v. *Cohill*, supra, 484 U.S. 350.

Thus, binding Second Circuit precedents evince a strong policy against the exercise of pendent jurisdic-

tion in situations in which the underlying federal claim has been eliminated prior to trial. Each of the factors identified in these cases supports our conclusion that this policy would have applied in the present case. See *Drexel Burnham Lambert* v. *Saxony Heights Realty*, supra, 777 F. Sup. 240. First, the RICO action had been pending before the federal court for only a fraction of the time the foreclosure dispute had occupied the state courts.[27] Second, given the complexity of the case and the litigiousness of the parties, the District Court had little reason to believe then, as we have little reason to believe now, that an actual trial on the merits of the counterclaim or cross complaint lay in close temporal proximity. Third, the predominant issues addressed in this litigation are of little federal concern and, with the exception of the RICO action, focus almost exclusively on state common law and civil statutes.[28] Finally, once the jurisdictionally sufficient RICO claims were eliminated in the earlier pleading stages, the values of judicial economy and comity militated against federal adjudication of lengthy state claims based on a complicated set of alleged facts and centered on a state foreclosure action. See American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts (1969) § 1313 (c), p. 213 ("[i]f the federal element that is the basis for jurisdiction is disposed of early in the case, as on the pleadings, it smacks of the tail wagging

[27] While the RICO action had been pending in the federal court for just over one half of a year prior to the District Court's decision, the parties had been trading pleadings and conducting extensive discovery in the foreclosure action for almost five years.

[28] The Rytmans did allege, in counts eight and fourteen of the counterclaim and in count sixteen of the cross complaint, a violation of 12 U.S.C. § 1972 relating to tying arrangements in bank lending practices. See footnotes 5 and 7 of this opinion. We cannot conclude, however, that three references to a federal statute made in the course of over 160 pages of pleadings containing forty-seven separate counts constitutes the type of important federal issue that would compel the District Court to assume pendent jurisdiction over a case otherwise based entirely on state causes of action.

the dog to continue with a federal hearing of the state claim").

We recognize that we cannot decide, with absolute certainty, that the District Court would have declined to exercise jurisdiction in this case. The test we have adopted, however, does not demand a showing of absolute certainty. On the basis of Second Circuit case law and under the facts of this case, we conclude that the District Court "would *clearly* have declined to exercise [jurisdiction] as a matter of discretion . . . ." (Emphasis added.) 1 Restatement (Second), supra, § 25, comment (e).

Accordingly, we conclude that the Rytmans did not have an "adequate opportunity" to litigate all their claims in the federal forum; see *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.*, supra, 236 Conn. 872; and should not, under principles of res judicata, be precluded from pursuing a state court resolution of their counterclaim and cross complaint. The trial court's ruling granting the motion for summary judgment cannot, therefore, be sustained on grounds of res judicata.

## IV

The Rytmans have presented two final, procedural issues for our review.[29] They claim that the trial court, *Hendel, J.*, improperly struck from the jury list their counterclaim in the foreclosure action and improperly severed the cross complaint from the foreclosure action. We will address each claim in turn.

## A

With respect to the first issue, we have recently restated the principles that govern the authority of a

[29] We address these issues in the interests of judicial economy as they are likely to arise on appeal should this case proceed to trial. See *State* v. *Ross*, 189 Conn. 42, 49, 454 A.2d 266 (1983) ("[i]n an appeal from [a final] judgment a party may claim error in any ruling of the trial court").

trial court, in the context of a foreclosure action, to strike a counterclaim from the jury list. See *Northeast Savings, F.A.* v. *Plymouth Commons Realty Corp.*, 229 Conn. 634, 642 A.2d 1194 (1994). When "incidental issues of fact are presented in an action essentially equitable, the court may determine them without a jury in the exercise of its equitable powers. . . . Where, however, the essential basis of the action is such that the issues presented would be properly cognizable in an action of law, either party has a right to have the legal issues tried to the jury . . . . Because a counterclaim is an independent action . . . the question presented is whether the . . . counterclaim is essentially legal or essentially equitable. . . . This analysis must be performed in the context of the [counterclaim] when read as a whole." (Citations omitted; internal quotation marks omitted.) Id., 641–42; see also *United States Trust Co.* v. *Bohart*, 197 Conn. 34, 45, 495 A.2d 1034 (1985). If, upon proper analysis, the trial court determines that the counterclaim is primarily legal, the defendant who asserts it is entitled, as a matter of constitutional right, to a jury trial on the counterclaim. *Northeast Savings, F.A.* v. *Plymouth Commons Realty Corp.*, supra, 642. A defendant's election to raise legal claims in the form of a counterclaim, rather than in a separate suit, does not signify a waiver of his right to a jury trial on such claims. Id., 642 n.10.

In this case, the trial court made two crucial determinations with respect to the Rytmans' counterclaim. First, the court determined that "[t]here's no question that [the Rytmans' counterclaim] is legal in nature . . . ." We concur in this determination. See footnote 5 of this opinion. Second, the trial court determined that, upon consideration of the legal issues raised in the counterclaim *viewed together* with the equitable issues raised in the foreclosure complaint, the court had the authority to deny the Rytmans' request for a

jury trial because, on balance, the relevant issues were primarily equitable. This determination was improper.

Once the trial court determined that the counterclaim was primarily legal, the trial court had no authority to strike it from the jury list.[30] Because a counterclaim is an independent action; *Northeast Savings, F.A.* v. *Plymouth Commons Realty Corp.*, supra, 229 Conn. 641; the right to a jury trial associated with a counterclaim stating issues of law cannot properly be balanced against the equitable nature of a foreclosure action.

On remand, however, the trial court is not compelled to leave both the plaintiff's foreclosure action and the Rytmans' counterclaim on the jury list. In the interests of preserving both the Rytmans' right to a jury trial on the counterclaim and the plaintiff's right to expeditious resolution of the foreclosure action, the trial court has discretion to retain the foreclosure portion of the case on the court side list, while placing the counterclaim on the jury list. See *New Milford Savings Bank* v. *Roina*, 38 Conn. App. 240, 242, 659 A.2d 1226, cert. denied, 235 Conn. 915, 665 A.2d 609 (1995); but see footnote 16. In exercising that discretion, the trial court will necessarily have to weigh the possible preclusive consequences that may attach to a decision on the merits of the foreclosure action in advance of a jury trial on the counterclaim. The balancing of these various concerns is a matter for full consideration on remand.

---

[30] The plaintiff contends, in the alternative, that the Rytmans have waived their right to a jury trial by purportedly entering into a guarantee contract that contained a jury waiver provision. Although the plaintiff brought the waiver provision to the attention of the trial court, that court based its decision on the equitable nature of the foreclosure action without making any findings with respect to the applicability or scope of the alleged waiver provision. The plaintiff, moreover, failed to raise this issue properly in a preliminary statement of issues on appeal. See Practice Book § 4013 (a) (1) (A). Under these circumstances, we decline to reach the merits of this claim and leave it to the trial court on remand to determine the significance, if any, of the alleged waiver provision.

## B

As their second procedural issue, the Rytmans claim that the trial court improperly severed their cross complaint from the foreclosure action. They contend that the trial court's severance decision was predicated on its decision to strike the counterclaim from the jury list and that, because the decision to strike was improper, so too was the severance order. Although we are persuaded that the trial court's decision was based, at least in part, on independent reasons of judicial economy, as well as on the resolution of the jury issue, we agree with the Rytmans that our decision that they are entitled to a jury trial on their counterclaim requires a plenary reconsideration by the trial court of the motion to sever.

The record demonstrates that, in issuing its severance order, the trial court was attempting to address multiple conflicting interests raised by the parties. To the extent that the order to sever and the order to strike from the jury list were interrelated, the trial court was concerned that if, *as the Rytmans wanted,* the counterclaim in the foreclosure action was retained on the jury list, trying both the cross complaint and the foreclosure action before one jury panel might give rise to difficult evidentiary problems. The trial court envisioned the possibility that jurors might have difficulty in coming to a proper appraisal of hearsay evidence admissible against only one of the parties if cases involving all of the parties were heard together.[31] See footnote 16 of this opinion. Thus, the trial court was concerned that *retaining* the counterclaim portion of the foreclosure action on the

---

[31] The court explicitly stated that "if [the foreclosure action] stays with the jury . . . [i]t might [entail] different evidence as to [the] hearsay exception. If it goes to the [c]ourt, then [that problem] will evaporate because the [c]ourt . . . can separate out which is hearsay [with respect to the appropriate parties] and which is not hearsay."

jury list, rather than striking that portion, would also have necessitated severing the cross complaint.[32]

The trial court was also persuaded that severance was appropriate in the interests of judicial economy. At the time of the severance decision, the four year old foreclosure action was in a state of preparedness that the action on the cross complaint was not: pleadings on the former were nearly closed and discovery nearly complete. The trial court had reason to be optimistic that severing the cross complaint, and the multiple parties it entailed, from the foreclosure action would both render the foreclosure action less complicated and accelerate its resolution.

Were we not reversing the trial court's decision on the jury trial issue, we would be persuaded that the trial court's decision on the severance issue was well within its discretion. See *Rode* v. *Adley Express Co.*, 130 Conn. 274, 277, 33 A.2d 329 (1943); *Alpha Crane Service, Inc.* v. *Capitol Crane Co.*, 6 Conn. App. 60, 68, 504 A.2d 1376, cert. denied, 199 Conn. 807, 508 A.2d 769 (1986). Nonetheless, we are now persuaded that the balancing of interests undertaken by the trial court must be revisited in light of our decision that the Rytmans are entitled to a jury trial of the legal issues raised in their counterclaim.

The judgment is reversed and the case is remanded to the trial court for further proceedings according to law.

In this opinion the other justices concurred.

---

[32] Contrary to the Rytmans' position, the trial court was willing, if it deemed necessary, to hold a mixed court/jury trial on the foreclosure action and cross complaint together. The court stated that "[i]t is not unusual for the [c]ourt to sit in a combined action and for the [c]ourt to hear the [c]ourt side of the case, and the jury to hear the jury case."