## THE UPJOHN COMPANY *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF NORTH HAVEN (14427)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

Argued September 29—decision released November 24, 1992

*S. Robert Jelley,* with whom were *William J. Doyle, Brian J. Casey* and, on the brief, *Patrick J. Monahan,* for the appellant (plaintiff).

*Robert K. Ciulla,* with whom was *Charles R. Andres,* for the appellee (defendant).

BORDEN, J. The plaintiff, The Upjohn Company (Upjohn), appeals[1] from the judgment of the trial court dismissing its zoning appeal from the decision of the defendant, the planning and zoning commission of North Haven (commission). The commission had denied Upjohn's applications seeking an excavation permit, a fill permit and two site plan approvals, in connection with its plan for permanent storage and closure of a solid sludge hazardous waste pile located on Upjohn's property on Sackett Point Road in North Haven. Upjohn claims that the trial court improperly: (1) determined that there was sufficient evidence in the record to support a finding that Upjohn's storage of the waste was not an accessory use permitted by the town's zoning regulations; and (2) concluded that federal law did not preempt the commission from denying Upjohn's applications. We affirm the judgment of the trial court.

This appeal comes to us after related federal litigation between the same parties involving some of the same issues. See *North Haven Planning & Zoning Commission* v. *Upjohn Co.,* 753 F. Sup. 423 (D. Conn.)

---

[1] Following the Appellate Court's grant of the plaintiff's petition for certification to appeal, the plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

(*North Haven I*), aff'd, 921 F.2d 27 (2d Cir. 1990) (*North Haven II*), cert. denied,     U.S.    , 111 S. Ct. 2016, 114 L. Ed. 2d 102 (1991). In light of the record in this case and the facts found in the federal court, the following facts are undisputed for purposes of this appeal.

In 1962, Upjohn began to produce synthetic organic chemicals at its manufacturing site located on the banks of the Quinnipiac River in North Haven. Wastewater is a byproduct of this manufacturing process. In 1968, Upjohn began to channel the wastewater through a series of lagoons in order to permit solids to settle before the water was discharged into the river. Upjohn dredged the solid waste material, known as sludge, that had accumulated in the lagoons and, in 1973, began to place this solid waste material on its property near a lagoon that contained an aeration device. The resulting sludge pile, which is the subject of this litigation, consists of a number of chemical materials that are classified as hazardous waste under the Federal Resource Conservation Recovery Act (RCRA). 42 U.S.C. § 6901 et seq. By 1977, the sludge pile covered approximately 4.25 acres, and by 1985 it stood approximately forty feet high and contained approximately 83,000 cubic yards of sludge.

Some time during the late 1970s, the commission became aware of the manner in which Upjohn was disposing of its sludge. Numerous communications between the parties followed regarding Upjohn's wastewater treatment and disposal system. In 1983, the commission granted Upjohn's application for permits to improve its wastewater treatment system, subject to numerous conditions, one of which was that Upjohn submit a plan and timetable for the removal of all existing sludge.[2]

---

[2] The enforceability of this condition is the subject of one of the companion appeals in this court. See *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 616 A.2d 793 (1992).

After a partial collapse of the pile in April, 1985, Upjohn removed approximately 27,000 tons of the sludge off-site, implemented a treatment system that significantly reduced the amount of waste material produced, and stopped placing additional sludge on the pile. Thereafter, Upjohn hired Malcolm Pirnie, Inc. (Pirnie), an environmental consulting firm, to evaluate the various ways of addressing the environmental issues posed by the sludge pile. Pirnie developed a plan for capping the pile in two stages: adding six inches of gravel; and then replacing the gravel layer with two feet of vegetated cover soil and a synthetic membrane.[3] Under this plan, the capped sludge pile and the subsurface groundwater were to be monitored for hazardous waste leachate for thirty years.

In 1989, the commission and its zoning enforcement officer sued Upjohn in the Superior Court to enjoin Upjohn from implementing the plan to cap the sludge pile, and to require Upjohn to remove the sludge. Upjohn removed the case to the United States District Court for the District of Connecticut, and counterclaimed to enjoin the commission from enforcing any local regulations prohibiting Upjohn from implementing its plan and its new wastewater treatment system. After a full trial, the federal court, *Daly, J.,* granted in part the relief sought by the commission by enjoining Upjohn "from implementing its temporary or final

---

[3] Pirnie estimated in 1986 that carting the sludge away would cost $22,600,000; incineration and carting away would cost $19,700,000; and chemical fixation and carting away would cost $40,500,000; whereas leaving the pile in place and capping it would cost $900,000. There was evidence produced in the federal trial between the same parties that some chemical manufacturers remove their waste off-site, others recycle and reuse it, others incinerate it, and still others use combinations of methods of on-site disposal similar to the method proposed by Upjohn. See *North Haven Planning & Zoning Commission* v. *Upjohn Co.,* 753 F. Sup. 423, 425 (D. Conn.), aff'd, 921 F.2d 27 (2d Cir. 1990), cert. denied, U.S. , 111 S. Ct. 2016, 114 L. Ed. 2d 102 (1991).

closure plan of the . . . sludge pile until such time as it has obtained the necessary permits from the [c]ommission," and denied the relief sought by Upjohn. *North Haven I,* supra, 432. Upjohn appealed, and the Second Circuit Court of Appeals affirmed. *North Haven II,* supra.

Thereafter, Upjohn filed the applications involved in this case. The applications sought to implement Upjohn's plan to install a permanent cap on the sludge pile and to close it in a manner that would leave it permanently on the property. After a full public hearing, the commission denied the applications for the stated reason that the sludge pile constituted an ongoing zoning violation. Upjohn appealed to the trial court, which dismissed the appeal. This appeal followed.

I

Upjohn first claims that the trial court improperly concluded that there was sufficient evidence in the record from which the commission could have determined that the permanent on-site storage of solid sludge hazardous waste was not an accessory use permitted under North Haven's zoning regulations. We disagree.

This claim arises in the following procedural context. Upjohn's property is located in an industrial IG-80 zone. Chemical manufacturing is a permitted use in that zone. The sole basis of Upjohn's applications to the commission, and the sole basis upon which it argued to the commission in support of its applications, was that the use contemplated by the applications, namely, the permanent on-site storage of the sludge pile, was a permitted use under § 3.27.2.24 of the zoning regulations.[4]

---

[4] Section 3.27 of the North Haven zoning regulations, entitled "Site Plan Approval, Applicability," provides in pertinent part: "To aid in determining the conformity of a proposed building or use with specific provisions of these Regulations, approval of a site plan by the Planning and Zoning Commission is required for: (a) the development or redevelopment of any

Upjohn did not claim before the commission that the sludge pile was an accessory use incidental to its permitted use of chemical manufacturing in an industrial IG-80 zone, pursuant to §§ 6.1 and 6.1.71 of the zoning regulations.[5] Accordingly, the commission had no occasion to consider whether the sludge pile constituted such an accessory use.

On appeal to the trial court, however, Upjohn claimed, among other things, that the commission had acted arbitrarily, capriciously and in excess of its statutory powers because the maintenance of the sludge pile was an accessory use incidental to Upjohn's permitted use of chemical manufacturing in an industrial IG-80 zone. Upjohn argued that the pile therefore did not con-

property or structure for a new use, (b) the expansion or relocation of any existing use, or (c) any change of use of a property or structure. . . .

"All site development and all use of the property shall be in conformance with approved site plan and all other provisions of these Regulations. No certificate of Zoning Compliance shall be issued until all such requirements have been met to the satisfaction of the Planning and Zoning Commission. Continued conformance with the approved site plan including the maintenance of all landscaping shall be a requirement of the continued validity of any such Certificate of Zoning Compliance.

"3.27.1 Standards The Planning and Zoning Commission shall not approve a duly submitted site plan unless it shall find that such plan conforms to the requirements of these Regulations. In reviewing the site plan, the Planning and Zoning Commission shall also take into consideration the public health, safety and general welfare, and shall set appropriate conditions and safeguards which are in harmony with the general purpose and intent of these regulations, particularly in regard to achieving the following . . .

"3.27.2.24 No storage of any type, including the temporary or permanent storage of waste products or material shall be permitted outside of an enclosed building without the expressed site plan approval of the Planning and Zoning Commission. In regarding such storage, the Commission shall consider the impact upon the public safety, public health, sanitation and aesthetics. The Commission may prohibit or may regulate such storage including but not limited to the amount, location, enclosure, screening, scheduled removal and the nature of the materials to be stored."

[5] Sections 6.1 and 6.1.71 of the North Haven zoning regulations provide in relevant part: "No use shall be permitted in any Commercial or Industrial Districts except . . . [a]ccessory uses customarily incidental to a permitted use on the same premises."

stitute a zoning violation as claimed by the commission. In response, the trial court found that "Upjohn was well aware . . . that the Commission considered the sludge pile a use not authorized by the zoning regulations. Upjohn had ample opportunity to present any evidence to establish that the use was in fact a permitted accessory use but did not do so."

The trial court also concluded that the "evidence on the record supports the determination that the maintenance of a four-acre sludge pile does not constitute an accessory use pursuant to § 6.1.71 of the regulations, which permits 'accessory uses customarily incidental to a permitted use on the same premises.' " Upjohn seizes on this second, alternative holding of the trial court as the basis of its claim in this court.

Upjohn argues that the trial court's judgment must be reversed because there is no evidence in the administrative record to support the trial court's conclusion that the "record supports the determination that the maintenance of . . . [the] sludge pile does not constitute an accessory use" under the regulations. Upjohn's argument, however, turns an applicant's burden of persuasion on its head.

We first note that the trial court concluded that "[c]ontrary to Upjohn's argument, the fact that North Haven permits some waste storage upon prior application and approval pursuant to § 3.27.2.24 of its zoning regulations does not entitle Upjohn to approval of its decision to create and to make permanent a pile of waste for which approval was neither sought nor granted." The trial court rejected on its merits, therefore, the only basis for maintenance of the sludge pile that Upjohn had presented to the commission, namely, that the pile was permitted under § 3.27.2.24. Upjohn has not challenged that conclusion in this appeal.

In general terms, an accessory use is a use that is customary and incidental to a permitted primary use. It is dependent on or pertains to the primary use. *Lawrence* v. *Zoning Board of Appeals,* 158 Conn. 509, 511–12, 264 A.2d 552 (1969). Whether a particular use qualifies as an accessory use is ordinarily a question of fact for the zoning authority, to be determined by it "with a liberal discretion." Id., 513–14.

Upjohn was the applicant before the commission and therefore had the burden of persuading the commission that it was entitled to the permits that it sought. See *Garibaldi* v. *Zoning Board of Appeals,* 163 Conn. 235, 239, 303 A.2d 743 (1972). If Upjohn wished to claim that it was entitled to approval of its applications because its sludge pile was an accessory use, it was obligated to present that claim with supporting evidence to the commission, to whom the factual question was committed. It did not do so. Therefore, it is not entitled to appellate review of that claim. See *Finkenstein* v. *Administrator,* 192 Conn. 104, 112, 470 A.2d 1196 (1984) (appellant not entitled to review of specific issue not properly raised before administrative agency). Upjohn's argument would require the bizarre result of reversing the commission's decision for lack of sufficient evidence in the record to support a factual finding on which Upjohn declined to offer evidence, despite its burden of persuasion thereon. We refuse to impose such an impractical rule. Indeed, to hold otherwise would require a zoning board, faced with a request for a permit on one specific basis, to insulate its decision from reversal on appeal only by searching, sua sponte, through the zoning regulations for some other unspecified, possible basis for the permit so as to adduce evidence to reject that other basis. Upjohn cannot prevail on this claim.

## II

Upjohn next claims that the trial court improperly rejected its contention that the approval of Upjohn's

capping and closure plan, by the United States environmental protection agency (EPA) and by the Connecticut department of environmental protection (DEP), preempted the commission from denying Upjohn's applications. The commission responds that (1) Upjohn is collaterally estopped from relitigating the preemption issue because that issue was decided adversely to Upjohn in the federal litigation, and (2) in any event, the trial court was correct in its analysis of the merits of the preemption issue. We agree with the commission that Upjohn is collaterally estopped from relitigating this issue. We therefore need not reach its merits.

This claim arises in the following procedural context. Under the RCRA and the applicable federal regulations, Upjohn was required to submit its capping and closure plan for approval by the EPA and DEP.[6] By a joint letter dated September 29, 1989, both agencies approved the plan. They stated that "the plan complies with the closure requirements pursuant to Section 22a-449 (c)-29 of the Regulations of Connecticut State Agencies, and with Title 40 Part 265 Subparts G and N of the Code of Federal Regulations. Both Agencies hereby approve the plan," subject to certain conditions not relevant to this case. They also stated, however, that "[t]his Approval does not relieve the facility of the obligation to obtain any other authorizations as may be required by other provisions of the Connecticut General Statutes, Regulations of Connecticut State Agencies, Code of Federal Regulations, or Federal Statutes."

---

[6] The RCRA was enacted in 1976 to assure that waste management practices are conducted in a manner that protects human health and the environment. 42 U.S.C. § 6902 (4). The act creates a partnership between the federal government and the states to carry out its purposes. 42 U.S.C. § 6902 (1). The act also provides: "Nothing in this chapter . . . shall be construed to prohibit any State or political subdivision thereof from imposing any requirements, including those for site selection, which are more stringent than those imposed by such [federal] regulations." 42 U.S.C. § 6929.

In the litigation in the United States District Court, Upjohn "claimed . . . that federal law preempts the local [zoning] requirements, and . . . filed a counterclaim seeking to restrain the [commission] from enforcing the [zoning] regulations so as to prevent Upjohn from implementing the plan . . . ." *North Haven I,* supra, 428. The District Court, therefore, considered that it "needs to resolve whether RCRA and the EPA/DEP Approval preempts the local zoning regulations and the Commission in these respects." Id.

The District Court thoroughly analyzed Upjohn's preemption claim. It first noted that "Congress . . . neither expressly preempted nor impliedly occupied the entire field of hazardous waste regulation through RCRA. . . . In fact, one of RCRA's express objectives is to establish a cooperative effort among the federal, state, and local governments and private enterprise to carry out the purposes of the Act. 42 U.S.C. § 6902 (a) (7)." Id., 429. The court also noted that the Act's savings clause permits states and municipalities to impose requirements more stringent than those imposed by the Act. Id.; see footnote 6. After consideration of the case law upon which Upjohn relied for its preemption claim, and consideration of "the federal law and local law allegedly in conflict in this case," the court concluded that "[i]t is clear from the text of the Act that closure can be accomplished through any means approved by the EPA, including the removal of hazardous materials." Id., 430.

Furthermore, the District Court, after considering the zoning regulations, as interpreted by the commission and its zoning enforcement officer, concluded that the case did not present either a direct or an indirect conflict with federal authority. Id., 431. After noting that "the Commission requires [Upjohn] to remove the materials, rather than conduct the federally approved activities on its own property," the court concluded that

"[r]ather than conflicting with RCRA, this would seem to be the exact sort of site selection process, or application of more stringent standards, envisioned by the savings clause. 42 U.S.C. § 6929." Id.

The District Court was not persuaded by Upjohn's argument that "the Approval constitutes an EPA determination that Upjohn's plan represents the most sound environmental action, and therefore any obstacle to its implementation is an obstacle to congressional goals . . . ." Id., 431–32. The court noted that "[t]here are many methods in which a hazardous waste site might be closed in accordance with RCRA, including removal." Id., 432. It rejected Upjohn's contention that the agency approval had determined that Upjohn's plan was the "*most* environmentally protective." (Emphasis in original.) Id. The court found significant that the EPA and the DEP had issued an approval, rather than an order, and the court refused to draw any conclusion "from the fact that the agencies issued the Approval with knowledge that the Commission considered the presence of the unclosed pile a zoning violation."[7] Id. Finally, the court noted that "the language of the Approval itself includes that it does not relieve Upjohn from obtaining any further authorizations required by the Connecticut General Statutes, which provide for the enactment of local zoning regulations. . . . For all of the foregoing reasons, and in light of the RCRA savings clause providing for a role for local government, the Court finds that the Approval does not preempt the Commission's actions or the local zoning requirements." Id.

---

[7] This refusal was consistent with the District Court's view, expressed earlier in its opinion, that "resolution of Upjohn's contention that it has not committed a zoning violation is not properly before this Court. . . . For purposes of this dispute, the Court must consider that, as matters currently stand, the presence of the pile on the Upjohn property constitutes a zoning violation." *North Haven Planning & Zoning Commission* v. *Upjohn Co.*, 753 F. Sup. 423, 427 (D. Conn. 1990) (*North Haven I*).

On appeal to the Second Circuit Court of Appeals, Upjohn contended "that the district court erred in concluding that RCRA does not preempt the Town's zoning regulations . . . ." *North Haven II,* supra, 27. In a per curiam opinion, the Circuit Court "considered all of Upjohn's arguments on this appeal and . . . found them to be without merit." Id. Specifically, the court cited the RCRA savings clause, and further noted that "the approval given by EPA and DEP to Upjohn's plan to cap its sludge pile stated that the approval did not relieve Upjohn from its obligation 'to obtain any other authorizations [that] may be required by other provisions of the Connecticut General Statutes," including local zoning regulations. Id., 27–28. Finally, the court recognized that, "[c]onsistent with the view that the approval was thus not intended to preempt local zoning regulations, EPA and DEP responded to public comments and questions by stating that if the Connecticut courts upheld a ruling that Upjohn's current plan would violate zoning regulations, Upjohn would have to submit to EPA and DEP a new plan for review and approval." Id. The court, therefore, saw "no error in the rulings of the district court that federal law and regulatory actions have not preempted the Town's zoning regulations," and affirmed the judgment "substantially for the reasons stated in the Memorandum of Decision of Judge Daly dated May 31, 1990, published at 753 F. Sup. 423 (1990)." Id.

The doctrine of collateral estoppel, or issue preclusion, provides that if "an issue of fact or law is actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action between the same parties, whether on the same or a different claim." (Internal quotation marks omitted.) *Saporoso* v. *Aetna Life & Casualty Co.,* 221 Conn. 356, 367, 603 A.2d 1160 (1992). In order for collateral estoppel to apply, however, there must be an

identity of issues, that is, the prior litigation must have resolved the same legal or factual issue that is present in the second litigation. *P.X. Restaurant, Inc.* v. *Windsor*, 189 Conn. 153, 161, 454 A.2d 1258 (1983).

The opinions of both the United States District Court and the Second Circuit Court of Appeals make it quite clear that those courts fully considered and determined, adversely to Upjohn, the issue of whether the commission was preempted by federal law and the EPA and DEP approval from enforcing the zoning regulations so as to bar Upjohn's capping and closure plan. This is the same issue that Upjohn attempts to litigate in these state proceedings. Collateral estoppel bars Upjohn from doing so.

Upjohn argues, however, that there is no identity of issues in the present appeal because "[t]he Federal District Court holding was limited to the validity of a facial preemption challenge to the Commission's regulations and did not involve a preemption challenge to the Commission's interpretation and application of those regulations in a specific factual setting and in the face of an EPA/DEP approval of the closure plan pursuant to RCRA." Upjohn contends that the District Court, in its May 31, 1990 decision, held only that "(1) the . . . zoning regulations . . . do not on their face conflict with RCRA and thus are not . . . preempted, and (2) Upjohn had not yet applied to the Commission for said permits and approval." This appeal, Upjohn argues, involves the different issue of whether the commission's decision, dated September 10, 1990, after the EPA and DEP approval, creates a direct conflict between the environmental approval and the zoning regulations and enforcement. The record does not support Upjohn's contentions.

First, neither the District Court nor the Court of Appeals confined its preemption analysis to the issue

of whether there was simply a facial conflict between the environmental approval and the regulations. This conclusion is compelled, not only by a thorough reading of both fact based opinions, but by their explicit language as well. The District Court concluded "that the Approval does not preempt *the Commission's actions or the local zoning requirements.*" (Emphasis added.) *North Haven I,* supra, 432. The Court of Appeals noted the recognition by EPA and DEP that, if the commission's contention of a zoning violation were upheld by our courts, Upjohn would be required to reapply for approval. That court also affirmed the District Court's judgment "substantially for the reasons stated" in the District Court's opinion. *North Haven II,* supra, 28.

Indeed, those courts were required to go beyond a claim of facial conflict because Upjohn's preemption claim required the courts "to consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written." *Jones* v. *Rath Packing Co.,* 430 U.S. 519, 526, 97 S. Ct. 1305, 51 L. Ed. 2d 604 (1977). Upjohn's argument would have us read the opinions of both federal courts as having overlooked this fundamental tenet of preemption analysis. We cannot do so.

Second, it is immaterial that, when the District Court decided the preemption issue, Upjohn had not yet applied to the commission for the permits involved in this case. The EPA and DEP approval preceded the entire federal litigation, at both the trial and appellate levels. The federal courts' preemption analysis focused, on one hand, entirely on the alleged conflict between that approval, and, on the other hand, on the zoning regulations and the commission's claim that Upjohn was in violation thereof. Inherent in that analysis was both the assumption that Upjohn was in violation of the zoning regulations, and the recognition that the EPA and DEP approval was contingent upon compli-

ance with such regulations. The District Court explicitly adopted as a premise of its decision that Upjohn was in violation of the zoning regulations; see footnote 7; *North Haven I,* supra, 527; and the Circuit Court did so implicitly by recognizing that Upjohn would have to reapply for approval if the state courts upheld a ruling that Upjohn's plan constituted a zoning violation. Thus, the subsequent decision of the commission denying the applications on the ground of the existence of a zoning violation had been fully anticipated by the federal courts in their preemption analysis.

The judgment is affirmed.

In this opinion the other justices concurred.