[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'SMOTION FOR SUMMARY JUDGMENT (#108)
The plaintiff complains that his employment was wrongfully terminated by the defendant employer. More specifically, in his five count complaint, he alleges a breach of contract (count one); intentional and negligent infliction of emotional distress (counts two and three); retaliation in violation of § 31-290a
for exercising rights under the Worker's Compensation Act (count four); and, breach of the implied covenant of good faith and fair dealing (count five). The defendant has moved for summary judgment on the breach of contract and implied covenant claims on federal preemption grounds and on all of the counts, on collateral estoppel/res judicata grounds, claiming that no genuine issue of material fact exists.
For the reasons stated below, the defendant's motion is granted on the breach of contract and implied covenant claims (counts one and five) and denied without prejudice as to the remaining counts.
I. Factual and Procedural Background
CT Page 12941
The plaintiff, Weldon Jones, was hired by the defendant, Carolina Freight Carriers Corp., as a driver/dockman on October 6, 1978. He was a member of a collective bargaining unit and was employed by the defendant pursuant to a collective bargaining agreement.
As a dockman, the plaintiff was responsible for loading and unloading freight and merchandise. The job required the plaintiff to lift heavy objects, to climb over or around freight and to constantly bend, reach, push or pull. The plaintiff was also responsible for repacking damaged freight and hooking and unhooking tractor trailers.
In May 1984, the plaintiff injured his back during the course of his work and he underwent surgery. As a result, he was diagnosed with a fifteen percent permanent partial disability of the lumbosacral spine. The plaintiff filed a workers' compensation claim and received benefits. Although the plaintiff continued to have intermittent problems with his back, he was able to perform his work without significant incident for the next ten years.
In 1993, the plaintiff was again out of work on disability leave due to a back injury. He again applied for and received workers' compensation benefits. The plaintiff returned to work in October, 1993, after obtaining a full work release from his physician. Nevertheless, the plaintiff had stiffness, moved slowly and wore a back brace outside his clothing.
While the plaintiff was out on leave, the defendant hired Scalzo, as the new terminal manager. Shortly after the plaintiff returned to work, Scalzo made a statement to the plaintiff which offended him. While in the presence of co-workers, Scalzo told the plaintiff that he looked "well done". The plaintiff, an African-American, alleges that the remark was clearly racial.
In late 1993, Scalzo sought information from the plaintiff's physician, Dr. Mittleman, regarding whether the plaintiff was physically qualified to perform the functions of his job. Mittleman reviewed the plaintiff's job description and restricted the plaintiff from performing a number of his job functions, and concluded that the plaintiff's restrictions due to his back injury were permanent.
The plaintiff was later informed by letter that he was placed CT Page 12942 on inactive status and was advised to make available any medical evidence refuting or rebutting the permanent nature or extent of the restrictions. On February 18, 1994, Scalzo met with the plaintiff to discuss the letter. He again informed the plaintiff that he was disqualified from his dockman position as a result of the permanent restrictions and that he was being removed from the active seniority list.[1]
On December 7, 1994, the plaintiff commenced an action in the United States District Court for the District of Connecticut. In that action, the plaintiff filed a ten count amended complaint alleging discriminatory discharge in violation of Article I of the Connecticut Constitution, the Fifth and Fourteenth Amendments
of the United States Constitution, the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act and Section 504 of the Federal Rehabilitation Act of 1973. The plaintiff also brought various state law claims pursuant to the court's supplemental jurisdiction. On March 24, 1997, the court, Nevas, J., granted summary judgment for the defendant on the plaintiff's federal claims and declined to exercise supplemental jurisdiction over some of his remaining state law claims, and dismissed them.[2]
On April 29, 1997, the plaintiff filed a five count complaint in this court, alleging breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress, retaliatory discharge in violation of General Statutes 31-290a, and breach of the implied covenant of good faith and fair dealing. The defendant filed this motion for summary judgment as to all five counts of the complaint. Each party submitted a memorandum of law and oral argument was held.
II. Standard for Summary Judgment
Summary Judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384. "In deciding a motion for summary judgment, the trial court must view the evidence in a light most favorable to the nonmoving party." Great Country Bank v. Pastore,241 Conn. 423, 435, 696 A.2d 1254 (1997). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that CT Page 12943 there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." Id., 435-36.
III. A. Counts One and Five: Breach of Contract andBreach of the Implied Covenant of Good Fair and Fair Dealing
Section 301 of the Labor Relations Management Act ("LMRA") provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties. . . ." 29 U.S.C. § 185 (a).
The United States Supreme Court has held that federal law preempts state law in § 301 suits. Allis-Chambers Corp. v.Lueck, 471 U.S. 202, 209-10, 105 S.Ct. 1904, 85 L.Ed.2d 206
(1985). "[I]n enacting 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." (Internal quotation marks omitted.) Id. Thus, "a suit in state court alleging a violation of a provision of a labor contract must be brought under 301 and be resolved by reference to federal law." Id., 210.
In Allis-Chambers Corp. v. Lueck, supra, 471 U.S. 210-11, the court explained that "[i]f the policies that animate 301 are to be given their proper range, however, the preemptive effect of 301 must extend beyond suits alleging contract violations. . . . Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort."
Therefore, "if resolution of a state law claim depends upon the meaning of a collective bargaining agreement, the application of state law . . . is preempted and federal labor-law principles . . . must be employed to resolve the dispute." Linglev. Norge Division of Magic Chef, Inc., 486 U.S. 399, 405-06,108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); see also Ellis v. Lloyd,838 F. Sup. 704, 707 (D.Conn. 1993) (holding that "[s]ection 301 also preempts those state law claims which are substantially dependent on analysis of a collective-bargaining agreement.") (Internal quotation marks omitted.) "[A]s long as the state law claim can be resolved without interpreting the agreement itself, the claim CT Page 12944 is `independent' of the agreement for § 301 preemption purposes." Lingle v. Norge Division of Magic Chef, Inc., supra486 U.S. 409.
Courts have held that suits alleging a breach of an employment contract and a breach of the implied covenant of good faith and fair dealing are preempted by § 301 of the LMRA when the plaintiff's employment is governed by a collective-bargaining agreement and resolution of the claim would require an interpretation of that agreement. See Claps v. Moliterno StoneSales, Inc., 819 F. Sup. 141, 150-51 (D.Conn. 1993) (holding that because plaintiff's breach of contract claim was based on a collective-bargaining agreement that governed her employment, and "because it would require the court to interpret the terms of [the agreement], this claim is clearly preempted by Section 301 of the LMRA."); Ziobro v. Connecticut Institute for the Blind,818 F. Sup. 497, 501 (D.Conn. 1993) (holding that "[w]hile the plaintiff's breach of contract and promissory estoppel claims are not based directly on he collective bargaining agreement, the court could not evaluate the validity of these claims without determining whether the collective-bargaining agreement was intended to be the sole agreement between the parties" and therefore, the claims are preempted by Section 301 of the LMRA);Anderson v. Coca Cola Bottling Co., 772 F. Sup. 77, 81 (D.Conn. 1991) (holding that the plaintiff's breach of contract claim was preempted by Section 301).
In the present case, the plaintiff admits in deposition testimony that he is a member of a collective bargaining unit and that a collective bargaining agreement governed his employment.[3]
The plaintiff further admits that no other contract governed his employment and that the only procedures that the defendant was required to follow were set forth in the collective bargaining agreement. In count one of the complaint, the plaintiff alleges that in terminating his employment, the defendant violated its own procedures governing discharges. The plaintiff also alleges that the defendant breached an express/implied contract of employment with the plaintiff without cause.
The determination of whether the defendant breached an employment contract with the plaintiff and whether "just cause" existed for removing the plaintiff from the active seniority list CT Page 12945 would require an interpretation and analysis of the collective bargaining agreement and the terms that governed the plaintiff's employment. Because resolution of this claim depends upon the meaning of the collective bargaining agreement, I conclude that count one of the complaint is preempted by Section 301 of the LMRA.
Furthermore, in Anderson v. Coca Cola Bottling Co, supra,772 F. Sup. 81-82, the court explained that a covenant of good faith and fair dealing is implied in every contract and is "designed to provide job security to employees who at common law could be fired at will. . . . Unionized employees enjoy job security under their collective bargaining agreement and § 301 preempts a cause of action for breach of covenant of good faith and fair dealing." (Citations omitted.); see also Milne EmployeesAssociation v. Sun Carriers, Inc., 960 F.2d 1401, 1411 (9th Cir. 1991), cert. denied, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993) (explaining that "[n]o comparable lack of job security, however, generally exists for unionized employees, whose employment relationship is governed by a collective bargaining agreement" and therefore, Section 301 preempts state claims for breach of the implied covenant of good faith and fair dealing); Cook v.Lindsay Olive Growers, 911 F.2d 233, 238 (9th Cir. 1990) (holding that "[w]here the collective bargaining agreement contains terms governing job security, this breach of the covenant of good faith and fair dealing cause of action is preempted.").
Count five of the complaint alleges a breach of the implied covenant of good faith and fair dealing. Because the plaintiff was a union employee whose employment was governed by a collective bargaining agreement, I conclude that Section 301 of the LMRA preempts the plaintiff's claim in count five of the complaint.
Having concluded that plaintiff's breach of contract and implied covenant of good faith and fair dealing claims are preempted by federal law, I further conclude that the defendant is entitled to judgment on counts one and five as a matter of law.
 IV. Counts Two, Three and Four, Intentional and Negligent Infliction of Emotional Distress and Retaliation under § 31-290a for Worker's Compensation Claims
As stated, Judge Nevas granted summary judgment for the CT Page 12946 defendant on a number of the plaintiff's federal claims. Judge Nevas also made a number of factual and legal findings upon which the defendant heavily relies upon in support of its res judicata/collateral estoppel arguments. The District Court's rulings are now on appeal to the Second Circuit.
I recognize that a state trial court judgment has been held to be final, despite a pending appeal, insofar as the issue dealt with the applicability of the rules of res judicata. Salem Park,Inc. v. Salem, 149 Conn. 141, 144, 176 A.2d 571 (1971). I also concede that a federal trial court judgment is entitled to the same status. See Upjohn Co. v. Planning and Zoning Commission,224 Conn. 82, 95, 616 A.2d 786 (1992). I also recognize that our Supreme Court has noted that ". . . the effect of a pending appeal upon an otherwise final judgment has aptly been characterized as one of the most troublesome problems in applying the rules of finality of judgment, because this is an area in which there are no technically precise and universally recognized rules." (Citations and internal quotation marks omitted).Preisner v. v. Aetna Casualty Surety Co., 203 Conn. 407, 413-14,525 A.2d 83 (1987).
Our Supreme Court has recently held in a case where a state trial court judge relied upon a district court judgment on appeal in granting summary judgment on collateral estoppel grounds, that "once the Court of Appeals for the Second Circuit made its own assessment of the . . . claims [at issue] and undertook independently to explain its reasoning, which was not identical with that of the district court, the relevant decision for purposes of issue or claim preclusion necessarily became that of the Second Circuit." Connecticut National Bank v. Rytman,241 Conn. 24, 39, 694 A.2d 1246 (1997).
Accordingly, in the interest of judicial economy and to avoid parallel appeals and the possibility of circuity of action, I decline to rule on defendant's res judicata/collateral estoppel claims, and deny the defendant's motion for summary judgment without prejudice.
Conclusion
The defendant's motion for summary judgment is granted as to counts one and five and denied without prejudice as to the remainder, counts two, three and four. CT Page 12947
Teller, J.