[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The appellants, Alfred O. and Rose C. Wittemen, take this CT Page 593 appeal from the decision of the respondent, Redding Zoning Commission (Commission), which granted the co-respondents, James and Joanne McMurray, site plan approval to conduct a "home day-care" business. The appeal is taken pursuant to Sec. 8-9 of the General Statutes.
On November 13, 1996, the McMurrays applied to the Commission for site plan approval for a "home day-care" business. On December 11, 1997, a public hearing was held on the matter. At the hearing, Joanne McMurray informed the Commission that her intention was to conduct a "group day-care" business at her residence. She stated that her "day-care" application was for more than seven but fewer than ten children, averaging eight children, and was to include one nonfamily employee.
At its meeting on January 8, 1997, the Zoning Commission voted to approve the McMurray site plan application with conditions, including a limit on the hours of operation, a maximum number of children of nine, and an operating schedule confirming to the Redding school calendar. The notice of the Commission's approval was published in the Redding Pilot newspaper on January 16, 1997. This appeal was commenced on January 27, 1997, by service of process upon the Redding Zoning Commission, the Town of Redding, and James and Joanne McMurray.
The appeal is grounded upon the following: (1) the cite plan application did not comply with the Zoning Regulations of the Town of Redding; (2) the decision was clearly erroneous in view of the reliable, probative, and substantial evidence in the whole record; (3) the decision failed to adequately consider such factors as traffic; numbers of children and employees permitted; property values; other ongoing businesses on the property; and illegalities on the property; (4) the application should have been governed by Redding Zoning Regulations § 8.1.174 ("Private School") and subject to a Special Permit review under Section 4.2.3.
"A site plan is a plan filed with a zoning commission or other municipal agency or official to determine the conformity of a proposed building, use or structure with specific provisions of the zoning regulations. It is a physical plan showing the layout and design of a proposed use, including structures, parking areas and open space and their relation to adjacent uses and roads, and containing the information required by the zoning regulations for that use. The agency has no independent discretion beyond CT Page 594 determining whether the plan complies with the site plan regulations and applicable zoning regulations incorporated by reference. A site plan may be modified or denied only if it fails to comply with requirements already set forth in the regulations. The zoning commission has no discretion to deny [a special permit] if the regulations and statutes are satisfied. . . . When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision." (Internal quotation marks omitted) CRRA v. Planning Commission.46 Conn. App. 566, 569-70 (1997). "Where a zoning board of appeals does not formally state the reasons for its decision, however, the trial court must search the record for a basis for the board's decision." Bloom v. Zoning Board of Appeals,233 Conn. 198, 208 (1995).
A court review of a Commission's decision serves "only to determine whether it was unreasonable, arbitrary or illegal."Schwartz v. Planning Zoning Commission. 208 Conn. 146, 152
(1988). "[T]he proper focus of a reviewing court is on the decision of the zoning agency and, with regard to its factual determinations, on the evidence before it that supports, rather than contradicts, its decision." Caserta v. Zoning Board ofAppeals, 226 Conn. 80, 87 (1993). The appellant bears the burden of demonstrating that the commission acted improperly. Adolphsonv. Zoning Board of Appeals, 205 Conn. 703, 707 (1988). "A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it. Therefore, as long as honest judgment has been reasonably and fairly exercised at the local level, the trial court must not substitute its judgment for that of the zoning board." New London v. Zoning Board of Appeals, 29 Conn. App. 402,405, 615 A.2d 1054, cert. granted, 224 Conn. 921, 618 A.2d 528
(1992).
The Redding zoning regulations provide two different classifications allowing the use of property for a child care business in a residential zone. Section 4.2.2 (a) of the Regulations allows a home occupation as a "permitted accessory use," requiring only site plan approval pursuant to Sec. 5.2 of the Regulations. Section 8.1.39 defines customary home occupation, in part, as an accessory use located in a dwelling or its accessory building, clearly incidental to the residential use. That section includes "child day-care" as a customary home occupation. Section 5.10 of the Regulations determines those CT Page 595 customary home occupations which also qualify as accessory home enterprises.
Section 4.2.3 (a) allows the operation of a private school in a residential zone; however, its operation is subject to special permit approval. Private schools are defined in Sec. 8.1.174 as "educational institutions," which may include a "day-care center." Special permits are issued in accordance with the requirements of Sec. 5.1 of the Regulations.
Under Sec. 19a-77 of the General Statutes, the State of Connecticut divides child day care services into three categories: "(1) A `child day care center' which offers or provides a program of supplementary care to more than twelve related or unrelated children outside their own homes on a regular basis . . . (2) A `group day care home' which offers or provides a program of supplementary care to not less than seven nor more than twelve related or unrelated children on a regular basis . . . (3) A `family day care home' which consists of a private family home caring for not more than six children, including the provider's own children not in school full time, where the children are cared for not less than three nor more than twelve hours during a twenty-four-hour period. . . ." Under the General Statutes, the McMurrays' proposal to provide a day care facility for more than seven and less than ten children fits within the definition of a "group day-care home."
The Wittemens argue that the McMurrays' proposal for a "group day-care home" is indeed a "private school" which includes day care centers, under Sec. 4.2.3 (a) of the Regulations. Thus, the Wittemens contend that the Commission should not have approved the McMurrays' "group day care home" as a "permitted accessory use" under Sec. 4.2.2 (a), requiring only site plan approval.
The evidence in the record discloses that the McMurray application is consistent with the requirements of a customary home occupation. Section 5.10, which regulates "child day-care" as a home enterprise under Sec. 8.1.39, recites that home enterprise uses "shall be in harmony with the residential character" and not create a "nuisance." Section 5.10 (a) allows the activities of the accessory home use to be conducted in an accessory building Section 5.10 (c) allows up to three nonfamily members as employees. Section 5.10 (h) provides that traffic generation shall not exceed twenty (20) vehicle trips per day. The evidence in the record indicates that the CT Page 596 McMurrays will use their garage as a permitted accessory building to conduct their day care activities; the McMurrays will have one nonfamily member as an employee; and, the McMurrays group day care will generate approximately fourteen (14) trips per day assuming an average of seven (7) children per day. Therefore, the McMurrays' "group-day care home" conforms to the requirements provided in Sec. 5.10. The court finds that it was reasonable and proper for the Commission to approve the McMurrays' day care proposal as an accessory use under Sec. 4.2.2 (a), necessitating only site plan approval.
The Wittemens' also argue that the Commission ignored evidence submitted of illegal actions on the McMurray property, along with evidence of two additional businesses thereon. Regarding the illegal activity, the Wittemens cite to the Redding Health Officer's observation that the septic system for the garage was installed without a permit. However, the record indicates that the McMurrays' septic system has been brought into compliance with the Public Health Code. The Wittemens continue by citing to alleged zoning violations arising from a finished apartment in the McMurray garage, and to violations arising from two other businesses maintained on the McMurrays' property. However, these activities are irrelevant to the McMurrays' current proposal because "compliance with zoning regulations shall be achieved by the institution of a cease and desist order or of a legal action . . . . [not by the] . . . denial of an application for unrelated site development. . . ." Upjohn Companyv. North Haven Planning Zoning Commission, Superior Court, judicial district of New Haven at New Haven, Docket No. 25 06 32 (February 22, 1991, Hodgson, J.), aff'd, 224 Conn. 82,616 A.2d 786; 224 Conn. 96, 616 A.2d 793; 224 Conn. 106,616 A.2d 798 (1992).
The McMurrays' final argument is that a member of the Commission improperly visited the McMurray residence after the public hearing was closed. "Knowledge obtained through personal observations of the locus may properly be considered by the agency. A site visit is therefore an appropriate investigative tool." (Internal quotation marks omitted.) Grimes v. ConservationCommission. 243 Conn. 266, 278 (1997). Although the appellants rely on Feinson v. Conservation Commission. 180 Conn. 421 (1980), the holding in that case is inapposite. In Feinson, the court held that a lay commission acts without substantial evidence, and arbitrarily, when it relies on its own knowledge concerning CT Page 597 technically complex issues in disregard of contrary expert testimony. In the present case, the testimony was not technical in nature, and nothing in the record suggests that the Commission disregarded contrary testimony. Furthermore, in Feinson, the Commission relied solely upon the Commissioner's testimony in making its decision. In the present case, however, the Commission relied upon the testimony of several neighbors.
In an analogous case, a Commissioner visited a site subsequent to the public hearing and prior to a meeting of the Board at which the appeal was denied. Napolitano v. Zoning Boardof Appeals of the Town of Stonington, Superior Court, judicial district of New London at Norwich, Docket No. 536421 (May 14, 1997, Shortall, J.). The court upheld the zoning board's decision because the Commissioner only testified to nontechnical, repetitive information. In the instant case, the appellants testified that children playing outside would interfere with their ability to rest, relax and think. In response, a Commissioner testified about the location of the "playpen area," where the children would be playing. This testimony is clearly nontechnical. Neighbors provided testimony concerning the impact that the children playing outside would have on the neighborhood. The Commissioner's testimony therefore is merely repetitive.
The record supports the decision of the Zoning Commission and this appeal is, accordingly, dismissed.
Moraghan, J.