[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
The plaintiff, Cynthia Backiel, appeals from a decision of the Trumbull Zoning Board of Appeals (ZBA), in which the ZBA upheld the Zoning Enforcement Officer's (ZEO) refusal to issue a CT Page 5024 cease and desist order to the Long Hill United Methodist Church (Church). Backiel alleges that she is the owner of a residence that "is situated adjacent to and abuts property owned by the Defendant Long Hill Church . . . in Trumbull." (Complaint, dated November 21, 1997, ¶ 1). The Church operates a nursery school and a daycare center on its premises, with an outdoor playground area adjacent to Backiel's property. (Return of Record [ROR], Item 1, Application for ZBA Hearing, Schedule A, dated October 15, 1997, p. 1). The ZBA granted the Church permission to create the nursery school on July 7, 1971. (ROR, Item 3(b), ZBA Minutes, dated July 7, 1971). The ZBA granted a variance to the Church to establish the daycare center on November 7, 1984. (ROR, Item 3(d), ZBA Minutes, dated November 7, 1984)
Backiel alleges that the Church had "excessive noise levels at all hours of the day and evening, and that the Church leased "facilities and outdoor areas to groups not even associated with the daycare or nursery . . ." (ROR, Item 1, Schedule A, p. 2). On May 21, 1997, the ZEO issued a cease and desist order to the Church, stating, "[a] review of all your past applications for use as a daycare/nursery school revealed no request to the [ZBA] for any use outside the school facility." (ROR, Item 1, Schedule A, Letter from ZEO to Church, dated May 21, 1997).
At some point between May 1997 and September 1997, the ZEO, without giving notice to Backiel, withdrew the Cease and Desist Order, because the Church agreed with the ZBA to "create a buffer area along their property line." (ROR, Item 3, Transcript of ZBA meeting, dated November 5, 1997, pp. 3-4). Attorney John Fallon, counsel for Backiel, sent a letter to the ZEO on September 18, 1997, asking the ZEO to re-issue the Cease and Desist Order because the buffer area "was wholly inadequate and does not provide the reasonable buffer necessary to protect . . . [Backiel's] privacy rights." (ROR, Item 1, Schedule A, Letter from Attorney Fallon to the ZEO, dated September 18, 1997). The ZEO responded by stating "I have reviewed my previous actions in this matter, re-inspected the property on September 24 [1997], and find no reason to issue a Cease and Desist order in this matter." (ROR, Item 1, Schedule A, Letter from the ZEO to Attorney John Fallon, dated September 25, 1997).
Backiel filed an application with the ZBA to appeal the ZEO's refusal to issue a cease and desist order. (ROR, Item 1) The ZBA conducted a hearing on Backiel's appeal (ROR, Item 3) and subsequently voted unammously to deny Backiel's appeal. The ZBA CT Page 5025 ruled "the Board believes that the playground is an accessory use, and part and parcel of what was granted by the ZBA in 1971 and 1984, and that the evidence presented at the hearing regarding the outside activities was inconclusive and the activities found to be [de minimis]." (ROR, Item 6, Letter from ZBA to Backiel, dated November 10, 1997).
The ZBA requested that the notice of their decision be published on November 12, 1997. (ROR, Item 5, Notice from ZBA, dated November 7, 1997). Backiel alleges that the ZBA's decision was published in the Connecticut Post on or about November 13, 1997. (Complaint, ¶ 11). There is no affidavit of publication or a copy of the notice in the Connecticut Post in the record. Backiel served the process on all defendants on November 24, 1997, and filed her complaint against the ZBA on November 25, 1997.
A party bringing an administrative appeal must strictly comply with the provisions of the statute from which the right to appeal arises. See Bridgeport Bowl-O-Rama. Inc. v. Zoning Boardof Appeals, 195 Conn. 276, 283, 487 A.2d 559 (1985). Failure to comply with the statute implicates the court's jurisdiction and may result in dismissal. See Capalbo v. Planning Zoning Boardof Appeals, 208 Conn. 480, 485, 547 A.2d 528 (1988)
 A. Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiffs appeal." Jolly. Tnc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). General Statutes § 8-8
(a) provides that an aggrieved person "includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the [ZBA]." In addition to pleading that "as owner of the abutting and adjacent property, [she was] aggrieved as a result of the . . . actions of the ZBA", Backiel submitted a copy of a warranty deed demonstrating that she owns certain property known as 15 Harned Place. (ROR, Item 15). Backiel has pleaded and proven that she owns land that abuts the subject property and, therefore, the court finds that Backiel is statutorily aggrieved.
 B. Timeliness and Service of Process 
General Statutes § 8-8 (b) states an "appeal shall be CT Page 5026 commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the day that notice of the decision was published as required by the general statutes." General Statutes § 8-8 (e) further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
Backiel instituted this appeal by service of process on November 24, 1997, twelve days after the date of requested publication indicated on the town's "Notice." (ROR, Item 5). Backiel served the ZBA's planning and zoning administrator, the assistant town clerk for the town of Trumbull and the pastor of the Church. (Sheriff's Return, dated November 24, 1997). Although the parties did not submit an affidavit of publication or a copy of the published notice, the court finds that the evidence provided is sufficient to demonstrate publication and that the appeal is timely and served on the proper parties.
 C. Citation
"In administrative appeals, the citation is the writ of summons that directs the sheriff or some other officer to seek out the defendant agency and to summon it to a particular setting of a particular court on a specified day." (Internal quotation marks omitted.) Tolly v. DePt of Human Resources, 225 Conn. 13,18, 621 A.2d 719 (1993); see also Charles Holdings. Ltd. v. Planning Zoning Board, 208 Conn. 476, 478, 544 A.2d 633 (1988) Backiel properly filed her citation in accordance with § 8-8
(b).
 D. Recognizance and Surety 
"The authority issuing a citation to the appeal shall take from the appellant, unless the appellant is an official of the municipality, a bond or recognizance to the board, with surety to prosecute the appeal to effect and comply with the orders and decrees of the court." General Statutes § 8-8 (h). Backiel has provided a bond to the ZBA to comply with the statute.
A trial court "review[s] the decision of a zoning board of appeals to determine if the board acted arbitrarily, illegally or unreasonably." Wnuk v. Zoning Board of Appeals, 225 Conn. 691,695-96, 626 A.2d 698 (1993). "The trial court ha[s] to decide CT Page 5027 whether the board correctly interpreted the section of the [zoning regulations] and applied it with reasonable discretion to the facts." Spero v. Zoning Board of Appeals, 217 Conn. 435, 440,586 A.2d 590 (1991).
"Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." Bloom v. ZoningBoard of Appeals, 233 Conn. 198, 208, 658 A.2d 559 (1993) "Where a zoning board of appeals does not formally state the reasons for its decision . . . the trial court must search the record for a basis for the board's decision." Id., 208. In addition, "following an appeal from the action of a zoning enforcement officer to a zoning board of appeals, a court reviewing the decision of the zoning board of appeals must focus, not on the decision of the zoning enforcement officer, but on the decision of the board and the record before the board." Caserta v. ZoningBoard of Appeals, 226 Conn. 80, 82, 626 A.2d 744 (1993).
"The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, supra, 233 Conn. 206. "The zoning board's action must be sustained if even one of the stated reasons is sufficient to support it." Iannucci v. ZoningBoard of Appeals, 25 Conn. App. 85, 89, 592 A.2d 970 (1991).
The ZBA cited as reasons for refusing to issue a cease and desist order that "the playground is an accessory use, and part and parcel of what was granted by the ZBA in 1971 and 1984, and that the evidence presented at the hearing regarding the outside activities was inconclusive and the activities found to be [de minimis]." (ROR, Item 6).
Backiel alleges that "the ZBA's action in denying [her] application was unlawful, illegal, arbitrary, capricious and in abuse of the powers vested in the ZBA under its [r] egulations and the Statutes of the State of Connecticut." (Complaint, ¶ 12) Backiel cites six reasons why the ZBA erred in not granting the cease and desist order:
1. The record does not demonstrate any reason to support the action of the ZEO in unilaterally withdrawing the cease and desist order, issued on May 12, 1997; CT Page 5028
 2. The record demonstrates that the previous approval granted to the Church with regard to the operation of the daycare/nursery program did not include provision for, nor was there any request for, the utilization of the outdoor area of the property so proximate to Backiel's single family dwelling;
 3. The Church's use of the property, in addition to not being sanctioned by any of the prior special exception approvals previously granted, constituted a violation of Article II, § 1B of the zoning regulations in that the use being conducted so proximate to Backiel's property is not in reasonable harmony with the surrounding residential structures;
 4. The Church's use of the property, in addition to not being sanctioned by any of the prior special exception approvals previously granted, constituted a violation of Article II, § 1B in that the use detracts from the residential character of the neighborhood and adversely effects the value of Backiel's, as well as other property values in the neighborhood;
 5. The Church's use of the property constitutes that of a "playground" in violation of the provisions of Article II, § 1, Paragraph A, Subsection 3; and
 6. The Church allows outside groups having no connection with either the daycare or nursery program to use the Church's outdoor area for a rental fee. This constituted a violation of Article II, § 12 and Article II, § 1 and is outside the scope of the approvals previously granted to the Church with regard to utilization of the property.
(Complaint, ¶ 12).
The ZBA argues that the ZEO retains discretion to issue and rescind cease and desist orders. In addition, the ZBA maintains that the school's use of the playground is an accessory use which is within the zoning regulations.
General Statutes § 8-7 states, "[t]he concurring vote of four members of the zoning board of appeals shall be necessary to CT Page 5029 reverse any order, requirement or decision of the official charged with the enforcement of the zoning regulations. . .
In this case, the ZEO reversed his own cease and desist order, without any concurring vote by the ZBA.
"[I]t is clear from the entire statutory scheme and our zoning case law that the zoning board hears and decides [administrative appeals] de novo . . ." Caserta v. Zoning Boardof Appeals, supra, 226 Conn. 88-89. Regardless of whether the ZEO acted improperly in reversing the cease and desist order, this court is limited to reviewing the actions of the ZBA, not the ZEO. See id., 82.
According to Article II, § 1B of the zoning regulations, the ZBA can grant special exceptions to cemeteries, churches, hospitals, and libraries, to name a few. Before the ZBA approves the special exception, the ZBA must find that "the land on which such use is to be conducted is landscaped in such a manner and the buildings in which such case is to be conducted are so designed in external appearances and layout that reasonable harmony with surrounding residential structures is maintained" and "that said land and buildings as so used will not detract from the residential character of the neighborhood in which they are located and will not adversely affect property values in said neighborhood." Trumbull Zoning Regs., Article II, § 1B.
Article II, § 1B(2) of the zoning regulations provides that "[c]hurches and other places of worship, including parish houses and Sunday school buildings; non-profit primary and secondary schools; and buildings housing personnel affiliated with said churches and schools" are eligible for special exceptions to the regulations. The daycare center and nursery school fall within this section. The daycare center informed the Connecticut Department of Health that it would provide outdoor facilities for the children when the center applied for its license in June of 1971. (ROR, Item 3(h), pp. 3, 5). The ZBA approved the center's application on July 7, 1971. (ROR, Item 3, pp. 14-15).
In addition, Backiel's attorney stated at the hearing that a school "can include outdoor activities that are reasonably accessory to the school uses." (ROR, Item 3, p. 12). The court finds that the Church's use of the outdoor area is an accessory use, and that the Church did not violate the special exception CT Page 5030 provision of the zoning regulations.
As previously stated, the ZBA had found that "the evidence presented at the hearing regarding the outside activities was inconclusive and the activities found to be [de minimis]." (ROR, Item 6). Backiel argues that the Church's use of their property is not in "reasonable harmony" with the surrounding residential structures.
Backiel stated at the hearing before the ZBA that the "kids are just running around screaming like it's not bothering anybody who's trying to enjoy their property." (ROR, Item 3, p. 17). Tom Schioppa, who lives at 11 Harned Place (Backiel lives at 15 Harned Place), stated at the hearing that "occasionally at times I do get home and you hear the noise out there . . . it's not peaceful." (ROR, Item 3, p. 17). Manuel Martinez stated at the hearing, "[w] hy should our friends and neighbors have to listen to kids shouting and screaming like maniacs. They have no control." (ROR, Item 3, p; 16). In addition, Ruth Gray wrote a letter to the ZBA stating, "I live in the same neighborhood as Ms. Backiel. There have been times in the past when I have heard very loud voices from the daycare center behind her house." (ROR, Item 3(e)).
Julie Conte, who works in the daycare, stated at the hearing that "we do not allow our children to scream and yell outside. They need to play with a soft tone of voice, and we do have our play area all fenced in with a wooden fence. I can't even see over it, so it must be six feet high . . ." (ROR, Item 3, p. 15). Reverend Baum, the Church's pastor stated at the hearing that the number of students outside can "get up to as high as 36 youngsters at a time during the course [of the week], but there are no youngsters in the yard later in the afternoon. There are youngsters from the nursery school who get out at 2:30 in the afternoon, 2:45 . . . there's nothing after that." (ROR, Item 3, p. 21).
Reverend Baum also added that the nursery meets from 9 a.m. to 3 p. m. and the daycare center meets from 7 a.m. to 5:45 p. m. (ROR, Item 3, pp. 22-23). In a letter from John Chiota, attorney for the Church, to Attorney Fallon, Reverend Baum set out a schedule of outdoor activities for Church-sponsored programs and for the outside groups. (ROR, Item 3(g)). The Church uses its outdoor facilities for a fellowship luncheon, a Boy Scout troop, a youth fellowship, Sunday school, and as a play area for CT Page 5031 children on Sunday when their parents are working at the church or attending service. The non-affiliated groups, a Chinese school and the Kumon tutorial program, are outdoors for about fifteen minutes or more on Sunday, Tuesday and Friday during the school year. (ROR, Item 3(g)).
Despite the statements from Backiel and several of her neighbors, there is no persuasive evidence in the record that the noise is unreasonable. Children will be children. The Church provided the ZBA with a schedule of outdoor activities. The nursery and daycare do not have outdoor activities before 8 a.m. and after 6 p. m., (ROR, Items 3(g) and 3(i)). The schools do not operate at an unreasonable time of day, and therefore, a finding by the ZBA that the noise does not disrupt the harmony with the surrounding residential structures would not be evidence of arbitrary, illegal or unreasonable action.
Backiel claims that her property will lose value because of the Churchs activities. The only support in the record for this were the statements of Backiel and several of her neighbors, as noted above. These statements do not establish that the residential character of the neighborhood has been altered because of the Church's outdoor activities. Although the Church's outdoor activities may be noisy at times, the ZBA could reasonably conclude that the residential character of the neighborhood has not changed.
In addition, there is no evidence, statistical or otherwise, that the value of Backiel's or any other person in the neighborhood's property has been or will be affected adversely by the outdoor activities at the Church.
Backiel contends that a "playground" must be "under the maintenance and direction of the town" according to Article II, § 1A(3) of the regulations. Backiel claims that individuals not affiliated with the Church's schools are using the outdoor area as a playground not under the maintenance and supervision of the town.
The Trumbull zoning regulations define an accessory use as "a subordinate use or building which is customarily incident to the main use or building and which is located on the same lot with said main use or building." Trumbull Zoning Regs, Article I, § 2(L). "Whether a particular use qualifies as an accessory use is ordinarily a question of fact for the zoning authority, to CT Page 5032 be determined by it with a liberal discretion." (Internal quotation marks omitted.) Upjohn Co. v. Planning ZoningCommission, 224 Conn. 82, 89, 616 A.2d 786 (1992).
As stated above, the zoning regulations allow schools to operate in residential zones. The ZBA granted permission to the Church to establish the nursery school subject to fulfillment of pertinent state and local regulations. (ROR, Item 3(a)). As indicated on the State Department of Health license application form, the nursery school would contain some 2,700 square feet of usable outdoor play area, consisting of a combination of dirt, grass and paved surface. (ROR, Item 3(h), p. 5). Therefore, the court believes that the ZBA could reasonably find that the outdoor area was an accessory use, and not a "playground" as defined by the zoning regulations.
As to groups not affiliated with the Church that use the outdoor area, the ZBA could find that there was "inconclusive evidence" to demonstrate that the outdoor area is a "playground", The only evidence in support of Backiel's claim is her statements before the ZBA. Backiel stated at the hearing that "it's the constant feel that it's a public playground. Any family that lives in the area comes in at any time, day or night, to have their children playing on the equipment there." (ROR, Item 3, p. 17). Reverend Baum stated at the hearing that "[w]e have our church picnics and those kinds of things . . . it's certainly not a public playground."
Accordingly, the ZBA could conclude that Backiel's statements are not sufficient to establish that a public playground exists on the Church's property.
Finally, Backiel alleges that the Church cannot be allowed to permit outside groups to use its facilities for a fee under Article II, § 1B and Article II, § 1 of the zoning regulations. Simply put, the sections of the regulations cited by Backiel do not expressly prohibit the Church's actions. In fact, these sections do not even address whether property owners may allow outside individuals or groups to use their property. Therefore, the ZBA could find that the Church is not violating the zoning regulations cited by Backiel.
For the above stated reasons, the court determines that the appeal should be dismissed and, accordingly, the instant appeal is dismissed. CT Page 5033
SKOLNICK, J.